Filed 8/24/15  Cantu v. Hermansen CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| PHILLIP CANTU,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>MARY HERMANSEN,<br><br>    Defendant and Respondent. | 2d Civil No. B257534<br>(Super. Ct. No. CV120256)<br>(San Luis Obispo County) |

Respondent Mary Hermansen sideswiped a car driven by appellant Phillip Cantu.  Appellant testified the collision forced his car to hit a curb, rupturing a cervical disc protrusion that had previously been repaired through surgery.  The jury awarded appellant damages of $22,500, less than the $25,000 statutory offer to compromise made by respondent.  (Code Civ. Proc., § 998.)[1]  The trial court awarded respondent her expert witness fees and costs.  After the offset for appellant's damages, the judgment awarded respondent fees and costs of $48,786.94.

Appellant contends the trial court improperly permitted an expert witness to offer opinions that contradicted admissions made by respondent during discovery.  He further contends the trial court erred when it allowed another expert to testify to the content of hearsay documents and then admitted those documents into evidence.  The trial court further erred, appellant contends, when it awarded respondent fees and costs pursuant to

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise stated.

section 998 because her settlement offer was ambiguous and therefore unenforceable. Finally, appellant contends the trial court improperly denied his request for attorney fees and expenses incurred to prove the falsity of requests for admission denied by respondent. (§ 2033.420.) We affirm.

*Facts*

Appellant had cervical spine surgery on March 22, 2010. By May 3, 2010, the symptoms precipitating the surgery had resolved. On May 12, 2010, respondent was driving on a surface street in Grover Beach, when she started to change lanes without noticing appellant's vehicle in the adjacent lane. As she moved into that lane, respondent's SUV collided with appellant's compact car. Appellant testified that he turned sharply away from respondent's SUV, hitting the curb. The collision caused only minor damage to both vehicles.

The next day, appellant experienced headaches, neck pain, and soft tissue swelling. He visited his primary care physician on May 14, complaining of pain. On May 27, he was referred back to Dr. Phillip Kissel, the neurosurgeon who had performed his surgery in March. Dr. Kissel concluded appellant had sustained some additional compression in his cervical spine, at a level just below the sight of his prior surgery. He advised appellant to take a conservative approach, using ice, heat and anti-inflammatory medications.

Over the next two months, appellant's most acute symptoms diminished but he continued to experience constant pain. In June 2010, appellant returned to his job as an RV repairman. On July 20, 2010, appellant had another MRI. Dr. Kissel testified that the MRI was nearly identical to one taken in February 2010, before appellant's first surgery. He opined the images look identical because the May 2010 accident re-injured the disc previously repaired in surgery. According to Dr. Kissel, appellant "was healing and doing well following a standard cervical surgery. [Appellant] was vulnerable, he was involved in a motor vehicle accident, which had forces directed to his neck, which created an instability and a problem with, basically, the soft tissues, primarily, and then, secondarily, an instability, which ultimately resulted in a progression on his MRI scan and his need for

2.

surgery." The accident caused "a recurrence of the disc herniation and that's why there was no change in the MRI scans."

Appellant had several doctor's appointments for various ailments after the July 2010 MRI but did not complain of neck pain. He was involved in another car accident on February 22, 2011. This accident sent appellant to the hospital emergency room for neck and back pain. Appellant testified the pain caused by the February 2011 accident lasted only about two weeks. He did not complain specifically about neck pain again until November 2011, when his primary care physician referred him to a pain management physician and back to Dr. Kissel. On November 30, 2011, appellant had a third MRI which disclosed disc herniation with lateral neurological compression in the same area as his prior surgery.

Appellant's accident reconstruction and biomechanics expert, Christopher Gayner, concluded it was possible for appellant to have steered his vehicle into the curb after being sideswiped by respondent, as he described. Gayner created a series of animated depictions of the collision, showing the vehicles moving at different speeds. He concluded it was unlikely the accident occurred at 5 to 10 miles per hour, as described by respondent, or at 35 to 40 miles per hour, as described by appellant. Instead, the vehicles were more likely moving at a speed of about 20 miles per hour. Gayner opined the collision would have caused a "significant jolt" to the occupant of appellant's vehicle. The force of the collision would have been sufficient to cause the soft tissue injury and disc herniation described by Dr. Kissel.

Dr. Lawrence Harter, a radiologist called by respondent as an expert witness, opined that the MRIs taken of appellant's cervical spine in February 2010 and July 2010 were virtually identical. Dr. Harter saw no evidence of a new injury in the July 2010 MRI images.

Dr. David Frecker, respondent's neurologist, testified that, in his opinion, appellant suffered "a soft-tissue injury, a strain type of injury[]" in the May 2010 collision with respondent. The injury did not involve broken bones or shifted or herniated disks. It

3.

was, Dr. Frecker opined, "primarily a problem in the muscles and perhaps the ligaments that hold our neck together."

Frecker opined that all of the symptoms attributable to the May 2010 collision had resolved by July 2010. Any care and treatment appellant received after the July 21, 2010 visit with Dr. Kissel was, in Dr. Frecker's opinion, unrelated to the injury appellant sustained in the accident with respondent. He based this opinion on the fact that appellant had only one complaint relating to neck pain between July 2010 and November 2011. This complaint was made during the February 2011 emergency room visit after appellant's second car accident. During that visit, appellant told the emergency room physician that his neck pain had resolved after the March 2010 surgery. The emergency room physician examined appellant's neck and concluded that it was normal.

During discovery, appellant served requests for admission that asked respondent to admit, "As a result of the SUBJECT ACCIDENT, [appellant] incurred cervical soft tissue swelling." Respondent denied this statement in response to the first set of requests for admission, but later admitted in response to a third set of requests for admission. Respondent's accident reconstruction and biomechanics expert, Peter Burkhardt, Ph.D., testified in his deposition that, given the forces in the subject accident, he "would not have expected any injury to the cervical spine." The trial court permitted Dr. Burkhardt's testimony at trial, over appellant's objection that his opinion contradicted respondent's admission.

At trial, Dr. Burkhardt testified that, in his opinion, the parties' vehicles could not have been traveling at 35 to 40 miles per hour as appellant claimed. "First of all, you can't get the secondary curb contact if Mr. Cantu's vehicle is traveling at 30 to 35 miles an hour at the moment of contact. It would travel beyond the northeastern curb well into the intersection and/or beyond. So you can't have the description as he has it. [¶] Number two, you can't have both vehicles making the turn at the corner. They would both be beyond the intersection. They both made the turn. [Appellant's] scenario of the speeds of the contact are physically impossible."

4.

Dr. Burkhardt also concluded that appellant's car did not hit the curb. "[T]here was no curb contact. There just isn't enough momentum to get the vehicle to the curb . . . ." In addition, there was no evidence of damage to the tires on appellant's car and the police report did not indicate any type of curb contact.

Dr. Burkhardt testified that, in his opinion, respondent's description of the accident – that both vehicles were traveling between 5 and 10 miles per hour and had only momentary, glancing contact – was physically possible. Under those conditions, the collision would have caused "approximately, a one-mile-per-hour change in vehicle speed . . . . Might be on the order of one G. One G is the acceleration due to gravity. As a comparison, if you were driving down the road and slammed on your brakes and skidded to a stop, that would be, roughly, seven-tenths to one G. If you were to cough or sneeze, your head would experience, roughly, two or three Gs. You're dealing with head accelerations, which drive the loads to the neck that are very comparable to the forces that one might readily experience in everyday life . . . ." Dr. Burkhardt testified he had "no way of disputing" Dr. Frecker's opinion that appellant suffered an injury in the collision. He added, however, "I can only say that the numbers are what they are."

The jury found respondent negligent and awarded damages of $23,200 to appellant, comprised of $1,200 in medical expenses and $22,000 in damages for past noneconomic losses. That amount was reduced by $14,990, which appellant received in a settlement with another defendant. The trial court awarded respondent expert witness fees and other costs in the amount of $57,919, pursuant to sections 998 and 1033.5 because appellant had rejected a section 998 offer of compromise. Consequently, the judgment awarded respondent net costs of $48,786.94.

*Discussion*

*Expert Testimony Contradicting Admissions*

Appellant contends the trial court erred when it permitted Dr. Burkhardt to testify that the forces present during the collision would not have been sufficient to cause injury. He contends the statement should have been excluded because it directly

5.

contradicts respondent's admission that appellant "incurred cervical soft tissue swelling" in the collision. We disagree.

"Any matter admitted in response to a request for admission is conclusively established against the party making the admission . . . ." (§ 2033.410, subd. (a).) Consequently, admissions made in response to requests for admission serve to narrow the issues for trial and eliminate the need for proof. (*Murillo v. Superior Court* (2006) 143 Cal.App.4th 730, 735.) Absent leave of court to amend or withdraw an admission, "no contradictory evidence may be introduced." (*Id.* at p. 736.) The admission is, however, binding only to the extent required by a literal reading of the request and the trial court retains discretion to determine its scope and effect. (*Birch v. Gombos* (2000) 82 Cal.App.4th 352, 359-360.)

Appellant reads respondent's admission too broadly. Respondent admitted that appellant incurred cervical soft tissue swelling in the accident; she did not admit any facts concerning the speed of each vehicle or the forces involved in the collision. Dr. Burkhardt's testimony focused on how the accident occurred, the speed of each vehicle and the amount of force generated by the collision. His opinions contradicted appellant's version of events, not the admission that appellant suffered a soft tissue injury. The trial court properly allowed Dr. Burkhardt's testimony.

*Medical Records*

Dr. Frecker testified that, in forming his opinion concerning the extent of appellant's injury, he considered records created by other medical professionals. These included records from a chiropractor appellant consulted in 2008, and hospital records created in 2011, after appellant sought emergency care for a subsequent car accident. No foundation was provided for the documents: the medical professionals who created them did not testify, nor were they authenticated by a custodian of records. (Evid. Code, § 1271.) Over appellant's hearsay objection, Dr. Frecker described the contents of these documents and two of them were admitted into evidence.

"An expert may rely upon hearsay and other inadmissible matter in forming an opinion. (Evid. Code, § 801, subd. (b).) But that matter relied upon must 'provide a

reasonable basis for the particular opinion offered.' (*Lockheed Litigation Cases* (2004) 115 Cal.App.4th 558, 564.)" (*Howard Entertainment Inc. v. Kudrow* (2012) 208 Cal.App.4th 1102, 1115.) Hospital records, though hearsay, may be used as a basis for an expert medical opinion. "However, 'a witness's on-the-record recitation of sources relied on for an expert opinion does not transform inadmissible matter into "independent proof" of any fact.' (*People v. Gardeley* (1996) 14 Cal.4th 605, 619 . . . .) 'Although experts may properly rely on hearsay in forming their opinions, they may not relate the out-of-court statements of another as independent proof of the fact.' (*Korsak v. Atlas Hotels, Inc.* (1992) 2 Cal.App.4th 1516, 1524-1525 . . . .) Physicians can testify as to the basis of their opinion, but this is not intended to be a channel by which testifying physicians can place the opinion of out-of-court physicians before the trier of fact. (*Whitfield v. Roth* (1974) 10 Cal.3d 874, 895.)" (*Garibay v. Hemmat* (2008) 161 Cal.App.4th 735, 743.) "Procedurally, if an expert does rely in part upon the opinions of others, the expert may be cross-examined as to the content of those opinions. It is improper, however, to solicit the information on direct examination if the statements are inadmissible." (*Mosesian v. Pennwalt Corp.* (1987) 191 Cal.App.3d 851, 864.)

Dr. Frecker was entitled to rely on the chiropractor and emergency room records in forming his opinion concerning the extent of appellant's injuries. (Evid. Code, § 801, subd. (b).) The trial court erred, however, when it permitted Dr. Frecker to testify concerning the content of those medical records and when it admitted the records into evidence because respondent provided no foundation for them. (*Garibay v. Hemmat, supra,* 161 Cal.App.4th at p. 743.)

The error was not, however, prejudicial. We may not reverse a judgment unless appellant demonstrates " 'a reasonable probability that in the absence of the error, a result more favorable to [appellant] would have been reached.' " (*Diaz v. Carcamo* (2011) 51 Cal.4th 1148, 1161, quoting *Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 574.) No such showing has been made here. During their testimony, both appellant and Dr. Kissel confirmed the facts reflected in these documents. Thus, even though the trial court erred when it allowed Dr. Frecker to testify to the content of the documents and when it admitted

7.

them into evidence, the error was not prejudicial because the facts reflected in the documents were established through other, non-hearsay testimony. There is no reasonable probability appellant would have obtained a more favorable verdict had the documents, or Dr. Frecker's testimony regarding their contents, been excluded.

*Section 998 Offer*

Respondent served a section 998 offer to compromise that read: "COME NOW [respondent] who hereby offers to allow judgment to be taken against [respondent], in favor of [appellant] in the amount of TWENTY FIVE THOUSAND AND NO/100 DOLLARS ($25,000), plus taxable cost, inclusive of any and all liens." Appellant contends the offer was unenforceable because the phrase "inclusive of any and all liens" is ambiguous. The offer did not describe or define the liens at issue. Appellant contends a judgment entered on the offer could, therefore, have shifted "liability entirely onto [appellant] for any financial obligations to third parties, including those lien holders unknown to [appellant] at the time of service." We are not persuaded.

A section 998 offer to compromise must be clear and specific. This means that, "from the perspective of the offeree, the offer must be sufficiently specific to permit the recipient meaningfully to evaluate it and make a reasoned decision whether to accept it, or reject it and bear the risk he [or she] may have to shoulder his [or her] opponent's litigation costs and expenses. [Citation.] Thus, the offeree must be able to clearly evaluate the worth of the extended offer." (*Berg v. Darden* (2004) 120 Cal.App.4th 721, 727.) An offer may include nonmonetary terms, or provide for the payment of attorneys fees and costs in an amount yet to be determined, without being fatally uncertain. (*Elite Show Services, Inc. v. Staffpro, Inc.* (2004) 119 Cal.App.4th 263, 268-269; *Valentino v. Elliott Sav-On Gas, Inc.* (1988) 201 Cal.App.3d 692, 697.) "Because applicable statutory and rule provisions set forth a procedure for determining the amount of attorney fees to be awarded pursuant to a contractual provision [citation], the fact that the offer does not specify a particular amount of attorney fees does not leave the matter open for the parties' future agreement, nor does it create an uncertainty that renders it unenforceable." (*Elite Show Services, Inc., v. Staffpro, Inc., supra,* 119 Cal.App.4th at p. 269.)

8.

"In interpreting a section 998 offer, general contract principles apply when they neither conflict with nor defeat the statute's purpose of encouraging the settlement of lawsuits prior to trial." (*Elite Show Services, Inc., v. Staffpro, Inc.supra,* 119 Cal.App.4th at p. 268.) The words of a contract are to be understood in their ordinary and popular sense. (*Butler v. City of Palos Verdes Estates* (2005) 135 Cal.App.4th 174, 181; Civ. Code, § 1644.) They are also to be explained "by reference to the circumstances under [the contract] was made, and the matter to which it relates." (Civ. Code, § 1647.) These long-established rules of contract interpretation compel us to conclude that the phrase "inclusive of any and all liens" refers to liens filed by creditors of appellant against his recovery in this matter. It cannot reasonably be understood to refer to a lien securing respondent's financial obligations, or to debts owed to or by a stranger to appellant. Thus, appellant could readily evaluate the offer because he would know whether any such liens existed. There was no ambiguity sufficient to render the offer unenforceable.

*Costs Under Code of Civil Procedure Section 2033.420*

The closer question is whether the trial court correctly determined that appellant failed to obtain a more favorable judgment than the section 998 offer. "When the defendant's offer includes costs, it is to be compared with the plaintiff's judgment plus preoffer costs including attorney fees." (*Heritage Engineering Const., Inc. v. City of Industry* (1998) 65 Cal.App.4th 1435, 1441.) Appellant contends the trial court erred when it found his judgment was less than respondent's $25,000 offer to compromise because it ignored $4,495 in costs and attorney fees appellant was entitled to recover under Code of Civil Procedure section 2033.420.

Section 2033.420, subdivision (a) provides: "If a party fails to admit the . . . truth of any matter when requested to do so under this chapter, and if the party requesting that admission thereafter proves the . . . truth of that matter, the party requesting the matter may move the court for an order requiring the party to whom the request was directed to pay the reasonable expenses incurred in making that proof, including reasonable attorney's fees." The award of costs is mandatory. (§ 2033.420, subd. (b).)

9.

The trial court has discretion to determine whether a party has proven the matter at issue and is therefore entitled to recover costs of proof. (*Stull v. Sparrow* (2001) 92 Cal.App.4th 860, 864.) A party is entitled to recover expenses only when the fact that was the subject of the request for admission has been "proven." (§ 2033.420, subd. (b).) "Proof is something more than just evidence. It is the establishment of a fact in the mind of a judge or jury by way of evidence. [Citation.] Until a trier of fact is exposed to evidence and concludes that the evidence supports a position, it cannot be said that anything has been proved." (*Stull v. Sparrow, supra,* 92 Cal.App.4th at pp. 865-866.) Given this definition of proof, "preparation for trial or arbitration is not the equivalent of proving the truth of a matter so as to authorize an award of attorney fees under section [2033.420]. Expenses are recoverable only where the party requesting the admission 'proves . . . the truth of that matter,' not where that party merely prepares to do so." (*Wagy v. Brown* (1994) 24 Cal.App.4th 1, 6.)

Here, respondent initially denied a requests for admission that the collision caused injury to appellant and that appellant was not at fault for the collision. After appellant incurred expert witness costs and attorney fees in preparing to prove his injuries, respondent admitted causation in response to a third set of requests for admission. On the first day of trial, she admitted that appellant was not at fault for the collision. Appellant now contends he is entitled to recover costs of proof under section 2033.420 because respondent's expert testimony required him to present evidence and prove that he was injured by the collision and was not at fault for it. Respondent contends appellant is not entitled to recover costs of proof because she admitted those facts prior to trial. We agree. Appellant needed expert testimony to prove the extent of his injuries, not their cause or the absence of comparative fault. As a result, he did not "prove" the facts identified in the requests for admission and he was not entitled to recover costs of proof under section 2033.420.

Appellant's treating neurosurgeon testified that the accident caused soft tissue injury and re-herniated the disc appellant had previously had surgically repaired. His accident reconstruction expert testified it was possible for appellant's car to have struck the

curb as he claimed, and that the collision could have been forceful enough to cause the injuries described by the neurosurgeon.  Appellant could not have prevailed without this testimony because respondent's experts testified the accident caused only a minor injury, that it was physically impossible for the accident to have occurred as appellant claimed, and that the forces created by the collision were minimal.  The expert testimony was, however, relevant to prove the extent of appellant's injuries, not their cause because causation was not in dispute.  By contrast, appellant's requests for admission related to the cause of his damages, not their extent.  We conclude the trial court did not abuse its discretion when it declined to award appellant his costs of proof under section 2033.420.  (*Bloxham v. Saldinger* (2014) 228 Cal.App.4th 729, 753; *Stull v. Sparrow, supra,* 92 Cal.App.4th at p. 864.)

*Conclusion*

The judgment is affirmed.  Respondent shall recover her costs on appeal.

NOT TO BE PUBLISHED.

YEGAN, J.

We concur:

GILBERT, P.J.

PERREN, J.

11.

Barry T. Labarbera, Judge

Superior Court County of San Luis Obispo

_____

Law Offices of Daniel J. O'Neil; Daniel J. O'Neil and Brian C. O'Neil, for Appellant.

Henderson & Borgeson, Jay M Borgeson, for Respondent.