[No. B194919. Second Dist., Div. Three. Apr. 1, 2008.]

ALEJANDRA GARIBAY et al., Plaintiffs and Appellants, v. MEHDI HEMMAT, Defendant and Respondent.

736

## COUNSEL

Law Offices of Edward W. Hess, Jr., and Edward W. Hess, Jr., for Plaintiffs and Appellants.

Carroll, Kelly, Trotter, Franzen & McKenna, Robert L. McKenna and David P. Pruett for Defendant and Respondent.

## OPINION

## KITCHING, J.—

### INTRODUCTION

Plaintiffs Alejandra Garibay (Garibay) and Toby C. Barron, Jr., appeal from a judgment entered after the trial court granted summary judgment on plaintiffs' claim for medical malpractice arising from surgery performed on Garibay by defendant Mehdi Hemmat, M.D. (Dr. Hemmat). Defendant's summary judgment motion relied solely on the opinion of a medical expert witness that Dr. Hemmat did not commit medical malpractice. The medical expert witness based his opinion on facts derived from his review of hospital and medical records. These records were not properly admitted into evidence under the business records exception to the hearsay rule, however, and did not accompany the declaration or the summary judgment motion. We find that the defendant moving for summary judgment failed to meet his burden of production of evidence, and reverse.

The summary judgment motion was insufficient because there were no facts before the court on which the expert medical witness could rely to form his opinion. The expert was not a percipient witness to and could not testify

about what happened during the surgery. A proper method for producing these facts would have been, for example, by means of a declaration or deposition testimony from the doctor who performed the surgery, or by properly authenticated medical records placed before the trial court under the business records exception to the hearsay rule. Defendant's summary judgment motion, however, failed to place medical records before the trial court under the business records exception to the hearsay rule, and therefore those records could not provide evidence to support the expert medical witness's opinion or the summary judgment motion. Only after the facts were properly before the trial court could the expert form an opinion, and could the defendant moving for summary judgment meet his burden of production. Because the summary judgment motion lacked any evidentiary basis, it failed to make the factual showing required to shift the burden to plaintiff. The grant of summary judgment must be reversed.

## FACTUAL AND PROCEDURAL HISTORY

*The Complaint:* On October 26, 2005, plaintiffs Alejandra Garibay and Toby C. Barron, Jr., filed a complaint for medical malpractice against defendant Mehdi Hemmat, M.D. It alleged that Garibay employed Dr. Hemmat, a licensed physician and surgeon, to perform a bilateral tubal ligation, whose purpose was to make it impossible for Garibay to become pregnant. Dr. Hemmat performed the tubal ligation surgery on May 21, 2004. The complaint alleged that Dr. Hemmat carelessly and recklessly failed to properly perform the surgery by failing to sever, ligate, and obstruct Garibay's fallopian tubes.

The complaint alleged that after the procedure, Dr. Hemmat recklessly and negligently failed to advise plaintiffs that the procedure had not been performed competently so as to render Garibay sterile, but gave specific, false assurance to plaintiffs that the procedure had been properly and competently performed. These assurances included a statement to Garibay, referring to her fallopian tubes, that "you got a good deal, I cut them, clipped them and burned them. You are never getting pregnant again." The complaint alleged that Hemmat made this statement with the intent and effect of assuring plaintiffs that the tubal ligation procedure was competently performed in a triply redundant manner, rendering Garibay sterile and free to engage in sexual relations without taking precautions to prevent pregnancy. After the surgery and in reliance on Dr. Hemmat's representations, plaintiffs resumed sexual relations and took no precautions to prevent pregnancy. In November 2004, plaintiffs discovered Garibay was pregnant. In July 2005, she delivered a child. The complaint alleged that as a result, plaintiffs would suffer

emotional distress, Garibay suffered physical pain from pregnancy, childbirth, and the second tubal ligation, and plaintiffs would suffer economic loss arising from Garibay's inability to work during the latter stage of pregnancy and after the child's birth and from expenses to support the child.

*Summary Judgment Motion:* On June 16, 2006, defendant filed a motion for summary judgment, which asserted that Dr. Hemmat complied with the standard of care. The sole evidentiary basis for the summary judgment motion was a declaration by defendant's expert witness, William Frumovitz, M.D., a board-certified obstetrician and gynecologist licensed to practice medicine in California. Dr. Frumovitz's declaration stated that he reviewed medical records from Dr. Hemmat's office and from Kaiser Harbor City regarding care rendered to Garibay. Dr. Frumovitz stated he was familiar with the standard of care of physicians performing a bilateral tubal ligation procedure like the one performed on Garibay. Dr. Frumovitz stated that in his practice as a gynecologist, he performed bilateral tubal ligations on his patients and used Endo GIA staplers.

Dr. Frumovitz's declaration also stated that according to medical records, Garibay received prenatal care from Dr. Hemmat, an obstetrician and gynecologist, who delivered Garibay's child in March 2004. Garibay requested a bilateral tubal ligation be performed by Dr. Hemmat. After an appropriate informed consent was obtained, the procedure was started on May 21, 2004. During the procedure, a fulgurating device malfunctioned. Dr. Hemmat then used an Endo GIA stapler to ligate Garibay's fallopian tubes. The procedure was concluded without difficulty and Garibay went home. Kaiser Harbor City records showed that Garibay discovered she was pregnant in November 2004, and delivered her child without complications in 2005. Dr. Moosadazehi performed a second bilateral tubal ligation. His operative note commented that staples were found on the serosa of Garibay's fallopian tubes.

Dr. Frumovitz stated his opinion, based on his training and experience as a physician and surgeon, that Dr. Hemmat provided Garibay with care that was within the standard of care. Dr. Frumovitz declared: "Dr. Hemmat, when confronted with the malfunctioning equipment, appropriately evaluated the situation and used a reasonable technique, the Endo GIA stapler, to attempt to complete the procedure. [¶] The use of an Endo GIA Stapler was appropriate and within the standard of care to accomplish a bilateral tubal ligation. An Endo GIA Stapler will not fire the staples, unless the tube is engaged and a surgeon has a reasonable expectation that if the staple fires, the tubes are engaged, will be cut by the device, and the staples remain in the tissue, thereby ligating the tube. [¶] Based upon my background, training, education,

and experience, as well as a review of the pertinent medical records, it is my opinion that Dr. Hemmat complied with the standard of care, as it relates to his involvement in Ms. Garibay's care and treatment."

Dr. Frumovitz's declaration concluded: "There is a percentage of the patient population that will experience a recannulization of their fallopian tubes through no fault of the physician and surgeon. It is my opinion, to a reasonable degree of medical probability, that nothing Dr. Hemmat did or failed to do caused the bilateral tubal ligation to fail[,] resulting in the pregnancy of Ms. Garibay."

Plaintiffs opposed the summary judgment motion by asserting, inter alia, that the summary judgment motion failed due to an improper evidentiary basis, and was supported by a largely inadmissible expert witness declaration.

Plaintiffs filed evidentiary objections to Frumovitz's declaration, asserting that all but its first paragraph lacked foundation, personal knowledge and authentication, and objecting that the declaration was hearsay, that the best evidence rule barred the declaration, and that the declaration was improper expert opinion. Thus plaintiffs disputed all facts in defendant's separate statement based on evidentiary objections to Frumovitz's declaration. The trial court sustained objections to two paragraphs of Frumovitz's declaration, but overruled all of plaintiffs' other objections. Plaintiffs' opposition and separate statement set forth no other material facts which plaintiffs contended were disputed.

*Grant of Summary Judgment:* In a written order, the trial court granted the summary judgment motion. The trial court found that the care and treatment rendered to Garibay met the applicable standard of care and that Garibay's injuries, if any, were not caused by Dr. Hemmat, and stated that plaintiffs failed to raise a triable issue of material fact. The trial court ordered that judgment be entered in favor of defendant Dr. Hemmat. Plaintiffs filed a timely notice of appeal.

## ISSUE

The main issue on appeal is whether an expert medical witness's declaration, setting forth facts of the surgery performed on plaintiff Garibay based on the expert witness's review of hospital and medical records which were not properly before the court, was sufficient to meet the burden of the production of evidence required of the party moving for summary judgment.

## DISCUSSION

### 1. *Summary Judgment and Medical Malpractice Principles*

A defendant moving for summary judgment bears the burden of showing that a cause of action has no merit because plaintiff cannot establish an element of the claim or because defendant has a complete defense. If the defendant makes this showing, the burden then shifts to the plaintiff opposing the summary judgment motion to establish that a triable issue of fact exists as to these issues. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768 [107 Cal.Rptr.2d 617, 23 P.3d 1143]; Code Civ. Proc., § 437c, subds. (a), (p)(2).)

"[T]he party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact . . . ." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [107 Cal.Rptr.2d 841, 24 P.3d 493].) The burden of production involves the presentation of evidence. (*Ibid.*; Evid. Code, § 110.) "A prima facie showing is one that is sufficient to support the position of the party in question." (*Aguilar,* at p. 851.)

To meet the burden of production, the party moving for summary judgment must support that motion "by affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice shall or may be taken." (Code Civ. Proc., § 437c, subd. (b)(1).) Supporting affidavits or declarations "shall be made by any person on personal knowledge, shall set forth admissible evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavits or declarations." (*Id.,* subd. (d).)

"In professional malpractice cases, expert opinion testimony is required to prove or disprove that the defendant performed in accordance with the prevailing standard of care [citation], except in cases where the negligence is obvious to laymen. [Citation.]" (*Kelley v. Trunk* (1998) 66 Cal.App.4th 519, 523 [78 Cal.Rptr.2d 122].)

### 2. *Because the Declaration of Defendant's Medical Expert Witness Had No Evidentiary Foundation, Defendant Failed to Meet His Burden of Production and Did Not Shift That Burden to Plaintiffs*

Dr. Hemmat's summary judgment motion was not supported by his deposition testimony or declaration, or by any other admissible evidence. The sole support for the summary judgment motion was Dr. Frumovitz's medical

expert witness declaration. Dr. Frumovitz's declaration stated that he had reviewed medical records from Dr. Hemmat's office and from Kaiser Harbor City Hospital. The declaration also referred to an operative note by Dr. Moosadazehi, who performed the second bilateral tubal ligation on Garibay. Neither the medical records nor the operative note were in evidence.

Dr. Frumovitz attempted to testify in his declaration to the facts of the medical procedure without personal knowledge of those facts. Relying on medical records that were not before the court, pursuant to the business records exception to the hearsay rule, Dr. Frumovitz set forth the chronology of Garibay's medical treatment, the details of the tubal ligation, the malfunction of a medical device, and the substitution of the Endo GIA stapler to ligate Garibay's fallopian tubes. Dr. Frumovitz then described Garibay's subsequent pregnancy, the second bilateral tubal ligation, and Dr. Moosadazehi's discovery of staples when he performed the second bilateral tubal ligation.

■ Although hospital and medical records are hearsay, they can be admitted under the business records exception to the hearsay rule. (*In re Troy D.* (1989) 215 Cal.App.3d 889, 902 [263 Cal.Rptr. 869]; Evid. Code, § 1271.) Such records, however, must be properly authenticated. (*People v. Moore* (1970) 5 Cal.App.3d 486, 492–493 [85 Cal.Rptr. 194].) Evidence Code section 1271 states the business records exception to the hearsay rule: "Evidence of a writing made as a record of an act, condition, or event is not made inadmissible by the hearsay rule when offered to prove the act, condition, or event if:

"(a) The writing was made in the regular course of a business;

"(b) The writing was made at or near the time of the act, condition, or event;

"(c) The custodian or other qualified witness testifies to its identity and the mode of its preparation; and

"(d) The sources of information and method and time of preparation were such as to indicate its trustworthiness."

■ Without those hospital records, and without testimony providing for authentication of such records, Dr. Frumovitz's declaration had no evidentiary basis. Consequently his expert medical opinion on whether defendant Hemmat met the standard of care had no evidentiary value. (*Bushling v. Fremont Medical Center* (2004) 117 Cal.App.4th 493, 510 [11 Cal.Rptr.3d 653].) "A properly

qualified expert may offer an opinion relating to a subject that is beyond common experience, if that expert's opinion will assist the trier of fact. (Evid. Code, § 801, subd. (a).) Even so, the expert opinion may not be based on assumptions of fact that are without evidentiary support or based on factors that are speculative or conjectural, for then the opinion has no evidentiary value and does not assist the trier of fact." (*Ibid.*)

■ We realize that although hospital records are hearsay, they can be used as a basis for an expert medical opinion. However, "a witness's on-the-record recitation of sources relied on for an expert opinion does not transform inadmissible matter into 'independent proof' of any fact." (*People v. Gardeley* (1996) 14 Cal.4th 605, 619 [59 Cal.Rptr.2d 356, 927 P.2d 713].) "Although experts may properly rely on hearsay in forming their opinions, they may not relate the out-of-court statements of another as independent proof of the fact." (*Korsak v. Atlas Hotels, Inc.* (1992) 2 Cal.App.4th 1516, 1524–1525 [3 Cal.Rptr.2d 833].) Physicians can testify as to the basis of their opinion, but this is not intended to be a channel by which testifying physicians can place the opinion of out-of-court physicians before the trier of fact. (*Whitfield v. Roth* (1974) 10 Cal.3d 874, 895 [112 Cal.Rptr. 540, 519 P.2d 588].) Through his declaration, Dr. Frumovitz attempted to testify to the truth of the facts stated in the declaration for an improper hearsay purpose, as independent proof of the facts.

■ Dr. Frumovitz had no personal knowledge of the underlying facts of the case, and attempted to testify to facts derived from medical and hospital records which were not properly before the court. Therefore his declaration of alleged facts had no evidentiary foundation. An expert's opinion based on assumptions of fact without evidentiary support has no evidentiary value. (*Bushling v. Fremont Medical Center, supra,* 117 Cal.App.4th at p. 510.)

Consequently, the summary judgment motion itself lacked any evidentiary basis. Defendant's summary judgment motion failed to meet its burden of production, and thus did not shift that burden to plaintiffs. Where the party moving for summary judgment fails to meet its burden, "summary judgment must be denied despite the lack of opposing declarations." (*Tresemer v. Barke* (1978) 86 Cal.App.3d 656, 666 [150 Cal.Rptr. 384].)

We therefore reverse the grant of summary judgment.

## DISPOSITION

The judgment is reversed. Costs on appeal are awarded to plaintiffs Garibay and Barron.

Klein, P. J., and Croskey, J., concurred.

A petition for a rehearing was denied April 22, 2008, and respondent's petition for review by the Supreme Court was denied June 25, 2008, S163489. George, C. J., and Corrigan, J., did not participate therein. Werdegar, J., was of the opinion that the petition should be granted.