Filed 1/30/15  Salvatto v. Mitchell CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| LATEACHEEAH SALVATTO,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>JARED MITCHELL,<br><br>        Defendant and Respondent. | A141424<br><br>(Contra Costa County<br>Super. Ct. No. MSC1102698) |

In this medical malpractice action, plaintiff LaTeacheeah Salvatto appeals in propria persona (pro. per.) from a summary judgment entered in favor of defendant Dr. Jared Mitchell.  She argues:  (1) there is a triable issue of fact as to whether Dr. Mitchell met the applicable standard of care in obtaining her informed consent to undergo spinal anesthesia; (2) Dr. Mitchell lacked legal standing to pursue a summary judgment motion on the same grounds asserted in a prior demurrer; (3) defense counsel "illegally obtained her deposition" by deposing her for more than seven hours; and (4) the expert witnesses relied upon by Dr. Mitchell lacked personal knowledge of the matters on which they offered opinions.  We affirm the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

On October 29, 2010, Salvatto underwent surgery on her right hip at John Muir Hospital.  Dr. Mitchell was the anesthesiologist who administered general and spinal anesthesia to Salvatto.

Salvatto filed suit against the hospital and Dr. Mitchell.  The operative, second amended complaint contains two causes of action—(1) medical negligence, and

1

(2) medical battery—lack of informed consent. Salvatto alleges that Dr. Mitchell was negligent in administering anesthesia to her and that, as a proximate result of Dr. Mitchell's actions, she suffered an injury to her spine resulting in partial paralysis. She claims her prior medical history revealed she was not an appropriate candidate for spinal anesthesia. Salvatto also alleges that Dr. Mitchell failed to inform her that spinal anesthesia would be used and failed to advise her of the potential side effects and risks of spinal anesthesia. She contends she would not have consented to the procedure had she been fully informed of the risks. Although not alleged in the second amended complaint, Salvatto claims to have developed arachnoiditis as a result of the treatment provided to her by Dr. Mitchell. Salvatto describes arachnoiditis as "an irreversible disease of the spine" that has resulted in leg paralysis, cognitive brain injury, brain lesions, continuous headaches, and sexual dysfunction.

Dr. Mitchell moved for summary judgment on the following grounds: (1) Salvatto cannot establish that the anesthesia care and treatment he provided to her fell below the applicable standard of care; (2) Salvatto cannot establish that any act or omission by Dr. Mitchell caused or contributed to any injuries she claims to have suffered; and (3) as to the battery cause of action, Salvatto cannot establish the required element of lack of consent.

In support of the summary judgment motion, Dr. Mitchell offered a declaration by a neurologist, Dr. Bruce Adornato, establishing that the medical care and treatment provided to Salvatto by Dr. Mitchell did not cause or contribute to any injuries Salvatto claims to have suffered. Dr. Mitchell presented evidence establishing that, to a reasonable medical probability, Salvatto does not have arachnoiditis. A declaration authored by Dr. Jerome Barakos, a radiologist, established that spinal MRI's of Salvatto taken after the 2010 surgery did not reveal evidence of arachnoiditis. As set forth in the evidence supplied by Dr. Mitchell, Salvatto has a number of somatic complaints—i.e., complaints for which there is no objective medical explanation. Her complaints are consistent with her pre-existing history of recurrent, unexplained choreoathetoid type movements, associated speech difficulties, and other pre-existing health problems. Dr.

2

Mitchell also offered evidence that the medical care and treatment provided to Salvatto was within the applicable standards of care and that he met the standard of care for obtaining the informed consent of Salvatto before she underwent spinal anesthesia.

In opposition to the summary judgment motion, Salvatto presented the following evidence: (1) a life-care provider assessment report; (2) a personal statement; (3) selected portions of the deposition of Dr. Mitchell; (4) an independent medical examination (IME) report prepared by Dr. Antonio Aldrete; (5) a medical records review prepared by Dr. Aldrete; (6) the anesthesiology report from the day of the 2010 surgery; (7) requests for admission propounded on Dr. Mitchell; and (8) form interrogatories propounded on Dr. Mitchell. The life-care provider assessment report is an unauthenticated, unverified report prepared by a "Certified Nurse Life Care Planner" that describes the types of treatments and therapies Salvatto will require in the future. The IME report was prepared in 2011 by Dr. Aldrete, who is identified as an anesthesiologist. The IME report is not verified under penalty of perjury. Dr. Aldrete opined that "[t]here is no doubt that Mrs. Salvatto has arachnoiditis based on her history, clinical symptoms that developed and confirmed by radiological findings." Although Dr. Aldrete's IME report contains some discussion concerning the cause of Salvatto's arachnoiditis, it does not contain a finding that an act or omission by Dr. Mitchell proximately caused her condition.

In reply, Dr. Mitchell objected to much of the evidence offered by Salvatto in opposition to the summary judgment motion. Dr. Mitchell objected to Dr. Aldrete's IME report on the ground it constitutes an inadmissible expert opinion and is hearsay. Among other things, Dr. Mitchell argued that Dr. Aldrete is not a radiologist and lacks the qualifications to interpret MRI's sufficient to render an opinion on the diagnosis of arachnoiditis. Dr. Mitchell also pointed out that the IME report is inadmissible because it is unauthenticated and is not signed under penalty of perjury. As to the life-care provider assessment report, Dr. Mitchell argued it was irrelevant, hearsay, and constituted an improper expert opinion. Dr. Mitchell further objected to the extent Salvatto, a lay person, purported to offer expert opinion through her deposition testimony and her

unverified "personal statement" that was supplied in opposition to the summary judgment motion.

The trial court granted the motion for summary judgment. The court concluded there was a triable issue of fact as to whether Dr. Mitchell met the applicable standard of care in obtaining Salvatto's informed consent before surgery. Nevertheless, the court granted the motion on the ground there were no triable issues of fact concerning the elements of causation and injury. The court noted that Dr. Mitchell had "come forward with expert witness testimony negating plaintiff Salvatto's theory of causation, which is that the spinal anesthesia administered by [Dr. Mitchell] caused [Salvatto] to suffer a permanent neurological condition referred to as arachnoiditis." The court also concluded that Dr. Mitchell had presented expert testimony "negating plaintiff Salvatto's contention that she suffered the neurological injuries that are the subject of this personal injury action." According to the court, Salvatto "failed to come forward with competent opposition evidence raising a triable issue of fact on the issues of causation or injury." The court sustained Dr. Mitchell's objections to Dr. Aldrete's IME report, the life-care provider assessment report, and statements made by Salvatto insofar as they were offered as expert opinion.

Salvatto filed a timely notice of appeal from the judgment of dismissal.

### DISCUSSION

At the outset, we observe that Salvatto's status as a pro. per. litigant does not exempt her from the rules of appellate procedure or relieve her burden on appeal. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1247.) We treat pro. per. litigants like any other party, affording them " 'the same, but no greater consideration than other litigants and attorneys.' " (*Ibid.*) The judgment is presumed correct on appeal and it is the burden of the party attacking it, whether represented by counsel or proceeding in pro. per., to "affirmatively demonstrate prejudicial error." (*People v. Garza* (2005) 35 Cal.4th 866, 881.)

4

**1.**     *Standard of review*

Summary judgment must be granted when there is no triable issue as to any material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) "[T]he party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co., supra,* at p. 850.) "A defendant . . . has met his or her burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established . . . . Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action . . . ." (Code Civ. Proc., § 437c, subd. (p)(2).)

We apply de novo review to a trial court ruling on a motion for summary judgment. (*Coral Construction, Inc. v. City and County of San Francisco* (2010) 50 Cal.4th 315, 336.) However, we apply an abuse of discretion standard in reviewing the court's rulings on evidentiary objections. (*Miranda v. Bomel Construction Co.* (2010) 187 Cal.App.4th 1326, 1335.)

**2.**     *Triable issues of material fact concerning standard of care*

Salvatto contends the trial court erred in granting summary judgment because there is a triable issue of material fact concerning whether Dr. Mitchell met the applicable standard of care in obtaining her informed consent. As we explain, the argument lacks merit.

A defendant moving for summary judgment is not required to demonstrate that there are no triable issues of fact as to *every* element of a cause of action pleaded by a plaintiff. It is sufficient if the defendant establishes that there are no triable issues of material fact as to *one or more* elements of a cause of action and, as a consequence, the defendant is entitled to judgment as a matter of law. (See Code Civ. Proc., § 437c, subd. (p)(2).)

The standard of care is just one element of a cause of action for medical malpractice. "The elements of a cause of action for medical malpractice are: (1) a duty to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) a breach of the duty; (3) a proximate causal connection between the negligent conduct and the injury; and (4) resulting loss or damage." (*Johnson v. Superior Court* (2006) 143 Cal.App.4th 297, 305.) In the case of medical battery, the elements of the cause of action are (1) that the defendant performed a medical procedure without the patient's informed consent, (2) the patient was harmed, and (3) the defendant's conduct was a substantial factor in causing the harm. (CACI No. 530A.) Both causes of action include causation and injury as elements that must be proved by a plaintiff to be entitled to relief.

Here, Dr. Mitchell came forward with expert testimony in the form of declarations establishing to a reasonable medical probability that Salvatto did not have arachnoiditis and that the medical care and treatment he provided to Salvatto did not cause or contribute to any of the injuries she claims to have suffered. Dr. Mitchell met his burden of demonstrating that Salvatto could not establish the elements of causation and injury that are essential to proving claims for medical malpractice and medical battery. The burden then shifted to Salvatto to show that a triable issue of fact existed as to causation and injury. She failed to satisfy her burden. Causation in a medical malpractice case must be proven with competent expert testimony. (See *Dumas v. Cooney* (1991) 235 Cal.App.3d 1593, 1603.) As the trial court pointed out, Salvatto failed to offer competent evidence raising a triable issue of fact as to causation or injury. Instead, she offered unauthenticated, unverified documents that purported to demonstrate that she suffered from arachnoiditis and that there was some causal connection to the 2010 surgery. On appeal, Salvatto does not challenge the trial court's evidentiary rulings sustaining objections to that evidence, but even if she had, we would find no abuse of discretion in disregarding the proffered evidence.

Consequently, it is immaterial that there may be a triable issue of fact concerning whether Dr. Mitchell met the applicable standard of care. Because there are no triable

issues of material fact as to causation and injury, Dr. Mitchell is entitled to judgment as a matter of law on the medical malpractice and medical battery causes of action.

**3.** ***Legal standing to pursue summary judgment motion***

Salvatto next argues that Dr. Mitchell lacked "standing" to pursue a summary judgment motion based on the same grounds pursued in an earlier demurrer. Her argument confuses a summary judgment motion with a motion for judgment on the pleadings. They are two distinct types of motion.

Salvatto relies on section 438, subdivision (g) of the Code of the Civil Procedure, which applies to motions for judgment on the pleadings and provides that such a motion may be made on the same grounds as a demurrer that has been overruled "provided that there has been a material change in applicable case law or statute since the ruling on the demurrer." In the case of both a demurrer and a motion for judgment on the pleadings, the plaintiff's allegations are accepted as true; the motion tests whether the facts as alleged in the complaint properly state a cause of action. (See *People ex rel. Harris v. PAC Anchor Transportation, Inc.* (2014) 59 Cal.4th 772, 777.) A motion for judgment on the pleadings would be duplicative of a previously filed demurrer brought on the same grounds unless the moving party established that the law had changed since the demurrer was overruled. Section 438, subdivision (g) of the Code of Civil Procedure simply establishes that a party cannot recharacterize its demurrer as a motion for judgment on the pleadings without some showing that the law has changed.

Summary judgment motions are governed by section 437c of the Code of Civil Procedure. Unlike a demurrer or a motion for judgment on the pleadings, a summary judgment motion does not accept the plaintiff's allegations as true. Instead, the moving party must offer competent evidence to establish that a cause of action fails as a matter of law. (See Code Civ. Proc., § 437c, subds. (b)(1), (c).) Because the nature and purpose of a summary judgment motion is different from the nature and purpose of a demurrer, there is no need for a defendant to establish a change in the law in order to pursue a summary judgment motion after a demurrer has been overruled. Consequently, there is no merit to the contention that Dr. Mitchell was not legally authorized to pursue summary judgment.

7

**4.** *"Illegally" obtained deposition*

Salvatto argues that her deposition testimony was "illegally" obtained because the deposition exceeded seven hours. The argument is meritless for reasons we explain.

Section 2025.290, subdivision (a) of the Code of Civil Procedure provides that, with certain exceptions, a witness's deposition may not exceed seven hours of total testimony. This restriction does not apply if the parties stipulate not to be bound by the seven-hour limitation. (Code Civ. Proc., § 2025.290, subd. (b).) Even in the absence of a stipulation, the court must allow additional time for a witness's deposition "if needed to fairly examine the deponent . . . ." (Code Civ. Proc., § 2025.290, subd. (a).)

Salvatto contends she was deposed for a period totaling 18 hours over three days. She offers no record citations or evidence to support her claim, but her argument fails for reasons beyond just the lack of record support. Specifically, there is no showing that she objected to the length of her deposition at the time it was taken or that she brought a protective order to limit the deposition's length. Under the circumstances, she waived the right to object to the length of her deposition. By acquiescing to the continued examination by Dr. Mitchell's attorney, she effectively stipulated not to be bound by the seven-hour limitation set forth in Code of Civil Procedure section 2025.290, subdivision (a). A party cannot willingly agree to be deposed in excess of seven hours and then later claim the entirety of the deposition must be disregarded as a result of the deposition's length.

In any event, Salvatto has failed to demonstrate how she was prejudiced in responding to Dr. Mitchell's summary judgment motion as a result of being deposed for over seven hours. As the trial court noted in denying Salvatto's claim, she "was free to offer her own opposition declaration addressing any issue raised in the motion."

**5.** *Expert opinions offered without personal knowledge of facts*

Finally, Salvatto objects to the fact that Dr. Mitchell's experts did not have personal knowledge of the facts bearing upon whether she gave informed consent to undergo spinal anesthesia. Because summary judgment was properly granted based upon the elements of causation and injury, it is irrelevant whether the experts had personal

8

knowledge of the facts concerning the element of consent.  Moreover, Salvatto is mistaken in arguing that an expert must have personal knowledge of the facts supporting that expert's opinion.  A medical expert may rely upon hospital and medical records as the basis for an opinion provided that the records are properly authenticated.  (*Garibay v. Hemmat* (2008) 161 Cal.App.4th 735, 742–743.)

## DISPOSITION

The judgment is affirmed.  Respondent shall be entitled to recover his costs on appeal.

_____
McGuiness, P.J.

We concur:


_____
Pollak, J.


_____
Siggins, J.