Filed 5/29/15  Slater v. Armada CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| GABRIELA SLATER,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>ROBERT ARMADA,<br><br>    Defendant and Respondent. | G050741<br><br>(Super. Ct. No. CIVRS1108549)<br><br>O P I N I O N |

        Appeal from a judgment of the Superior Court of San Bernardino County, Joseph R. Brisco, Judge.  Reversed.

        Law Offices of David S. Lin, David S. Lin and Maximilian Lee for Plaintiff and Appellant.

        Walker & Mann, Jeffrey A. Walker, Douglas K. Mann, and Jean K. Bak for Defendant and Respondent.

Gabriela Slater appeals from the summary judgment in favor of Dr. Robert Armada in this medical malpractice action. She contends the only evidence offered to show the absence of negligence (an expert declaration) was inadmissible, so the trial court should have denied summary judgment. We agree and reverse the judgment.

FACTS & PROCEDURE

*The Complaint*

Slater's complaint against Armada alleged a single cause of action for medical malpractice. She alleged that on February 23, 2011, she was admitted to San Antonio Community Hospital (San Antonio), where Armada performed an exploratory laparotomy to remove lesions, adhesions, and a possible cyst from around her bowel. After the surgery, Armada informed Slater the surgery was successful and there had been no complications. That night, Slater began experiencing intense pain but when she told Armada, he dismissed her pain as minor and badgered her with rude comments about being fat. Slater learned from medical personnel at San Antonio that she had suffered a perforated bowel during the course of the surgery.

Slater was discharged from San Antonio on February 26, 2011, and had a follow up appointment with Armada on March 3 when he again insisted she was fine, despite her complaints of pain. Over the next few days, Slater experienced increasingly severe pain and began showing signs of serious infection at the site of the surgical incision. On March 7, she was taken to the San Antonio emergency room, re-admitted, and underwent emergency surgery by Dr. Vinod Garg to perform a "bowel erection or resection" due to infection. Her diagnoses on re-admission to San Antonio included an abscessed bowel, acute respiratory failure, acute renal failure, postoperative anemia, and diabetes mellitus (which she apparently had not previously been diagnosed with).

Slater remained in San Antonio for 10 days, which included a week in the Intensive Care Unit, and was then transferred to Heritage Park Nursing Facility (Heritage Park) for another 10 days. Slater later underwent a third abdominal surgery, which she

alleged was due in part to medical conditions exacerbated by Armada's negligently performed surgery. After that third operation, Slater was diagnosed with endometrial cancer. Slater alleged she suffered numerous serious injuries as a result of Armada's negligent performance of the laparotomy including acute kidney failure, a perforated bowel, and the subsequent development of diabetes and endometrial cancer.

*The Summary Judgment Motion*

*Moving Papers*

Armada filed a motion for summary judgment asserting there were no triable issues of fact on standard of care and causation. His separate statement of undisputed facts set forth nine facts and cited the declaration of his expert witness, Dr. James A. Macer, as the only supporting evidence. The nine facts were: (1) Armada provided medical care to Slater that conformed to the requisite standard of care; (2) "Armada's recommendation of [the surgical procedure] . . . was clearly appropriate given [Slater's] complaints and presentation[;]" (3) the surgery was performed in an appropriate manner and within the standard of care, there was no evidence Armada injured Slater's bowel during the surgery, and there was proper informed consent identifying injury to the bowel as a risk; (4) Armada's post-operative care of Slater was within the standard of care, there were no findings indicating she suffered injury to her bowel, and when she was discharged from San Antonio she had a normal temperature and was able to tolerate food and ambulate; (5) there was no relationship between the surgery and Slater's subsequent diagnoses of diabetes and endometrial cancer; (6) to a reasonable degree of medical probability, Armada's treatment of Slater did not cause or contribute to Slater's injury; (7) there was an increased known risk of bowel perforation and obstruction given Slater's history of abdominal surgery, pelvic and abdominal scarring, and endometriosis; (8) Slater's "post-operative course" was the result of her preexisting conditions; and (9) Slater's injuries were not the result of any improper medical care by Armada.

3

Armada's counsel, Jeffrey A. Walker, submitted a declaration attaching the evidence in support of Armada's summary judgment motion. Walker declared he had personal knowledge of the facts contained in his declaration. He declared he was attaching to his declaration Slater's complaint, and "true and correct copies" of Macer's declaration and Curriculum Vitae. Walker stated he was attaching as Exhibit D, "a CD-ROM containing true and correct copies of records that were sent to . . . Macer for his review," including the medical records of Armada, Dr. Richard Armour, San Antonio, and Heritage, and the depositions of Slater, her husband, and another witness named Lisa Fox.

Exhibit D, the CD-ROM, contains seven files in PDF form. The first three files are PDFs of deposition transcripts of Slater, her husband, and Fox. Exhibit D contains a 368-page PDF of medical records from Heritage Park and a 752-page PDF file of medical records from Armour, both of which include signed form declarations from the custodians of records. Exhibit D contains a 3,548-page PDF file of Slater's medical records from San Antonio, which contains blank unexecuted form custodian of records affidavits. Exhibit D also contains a 79-page PDF of medical records that appear to be from Armada's office.[1]

*Macer's Declaration*

Macer's declaration stated he had reviewed copies of medical records of Armada, Armour, San Antonio, and Heritage, and the depositions of Slater, her husband, and Fox, that were referred to in Walker's declaration. He was familiar with the standard of practice required of an obstetrician/gynecologist practicing in Southern California.

---

[1] We note none of the deposition PDF files bear signatures of the deponent or the reporter. Additionally, the PDF file of Armada's medical records contains no declaration from the custodian of records—blank or otherwise.

4

Macer declared Slater had a history of multiple abdominal and pelvic surgeries prior to being treated by Armada, and a history of diverticulosis and other medical conditions. Armada began treating Slater on February 10, 2011, due to a four-month history of ongoing abdominal pain with increased severity and a lengthy history of urine incontinence. A CT scan performed on January 24, 2011, showed multiple diverticula in the colon and a possible endometrioma. Armada confirmed Slater's abdominal and pelvic pain, but was unable to determine whether she had an ovarian cyst or a peritoneal cyst. He recommended performing an exploratory laparotomy.

Armada conducted a pre-operative physical examination on Slater on February 22, 2011, and she revealed a history of high blood pressure, peptic ulcers, chest pain/tightness, heart murmur, prior cancer that was surgically treated in 1982, kidney stones, shortness of breath, and her prior gynecologic surgeries including an open exploratory laparotomy for lysis of adhesions, laparoscopy, hysterectomy, and bilateral salpingo oophorectomy. A pre-operative chest X-ray ordered was normal. Slater signed a pre-surgical consent form explaining specific risks of the surgery including bleeding, infection, and possible injury to the bowel, bladder, or ureters.

Macer declared that Armada's operative report indicated the surgical plan was to rule out extensive omental pelvic and bowel adhesions. Upon entering the pelvic cavity, he found extensive adhesions that he freed, he irrigated and suctioned the pelvis with no bleeding, and he inspected for other medical conditions and found "a mesenteric tear in the bowel, which was sutured." Slater was returned to recovery in a satisfactory condition. Armada followed up with Slater in the hospital, and she was discharged in a satisfactory condition with no fever and no drainage at the incision site.

When Slater was seen at Armada's office on March 3, 2011, she was "afebrile and her incision was intact[.]" She returned to Armada's office on March 7, 2011, complaining about pain at the incision site. Armada had a "clinical

5

impression . . . of post-operative incisional drainage with a possible bowel perforation." Armada's staff immediately took Slater to the emergency room at San Antonio. She was admitted and diagnosed with peritonitis with possible bowel perforation or abscess. On March 7, 2011, "Garg performed an exploratory laparotomy with drainage of collected fluid, resection of the small bowel, and resection of the cecum with enterorrhaphy." Garg found fecal contamination in the lower part of the abdomen, removed inflamed portions of the small bowel and cecum. "Slater was noted to have tolerated the procedure well." She was discharged from the hospital March 15, 2011, in a stable condition.

Macer declared, "At all times, . . . Armada provided medical care to . . . Slater that fully conformed to the requisite standard of care. [¶] Based on a review of all the medical records, [his] recommendation of an exploratory laparotomy and lysis of adhesions to address the issues of an adnexal mass and scar tissue was clearly appropriate given [Slater's] complaints and presentation. [¶] . . . Armada fully complied with the applicable standard of care in conducting [Slater's] February 23, 2011[,] surgery. The exploratory laparotomy was performed in an appropriate manner and within the standard of care. There is no evidence demonstrating . . . Armada injured the small bowel during the surgery . . . [and] the pre-operative informed consent was clear and specific, identifying a risk of a possible injury to the bowel, which is also within the standard of care. [¶] . . . Armada's care and treatment of [Slater] also met the standard of care in monitoring and caring for [Slater] post-operatively both within the hospital setting and during office consultations after [she] was discharged. There were no findings during . . . Slater's post-operative care that indicated she suffered from any injury to her bowel, as [she] had normal temperatures without a fever, was able to tolerate food without difficulties, and was able to ambulate without difficulty."

Macer declared that to a reasonable degree of medical certainty there was no relationship between the surgery and Slater's subsequent diagnosis of endometrial cancer or diabetes. He declared, "It is my opinion, based on all of the data available,

6

that . . . Slater's post-operative course was the result of her pre-existing and presenting medical conditions . . . [and her] claimed injuries and damages are not the result of any improper medical care on the part of . . . Armada."

*Opposition/Evidentiary Objections*

Slater's opposition to the summary judgment motion included written objections to Macer's declaration in its entirety. The first objection labeled "Lacks Foundation" was followed by a citation to *Garibay v. Hemmat* (2008) 161 Cal.App.4th 735, 743 (*Garibay*), and *Kelley v. Trunk* (1998) 66 Cal.App.4th 519, 523 (*Kelley*). She objected the materials Macer relied upon had not been identified in any meaningful way—he simply stated broadly he had reviewed the medical records and failed to attach to his declaration any of the specific documents upon which he relied. She argued that to lay a proper foundation for Macer's opinions, he had to establish they had factual support from sources admissible into evidence. Without attaching the records to Macer's declaration with identification of the specific documents therein upon which he relied, Armada had failed to present admissible evidence from which the trial court could determine if Macer's declaration had evidentiary value.

Slater's second objection was labeled "Failure to Reference the Supporting Evidence After Each Material Fact Alleged" followed by a citation to Code of Civil Procedure section 437c, subdivision (b)(1), and *Garibay, supra,* 161 Cal.App.4th at page 743. In it she argued Armada's separate statement had simply cited to Macer's declaration as support for the undisputed facts, without reference to admissible evidence. She argued Macer did not have personal knowledge of the facts upon which he based his opinion. Thus, the facts upon which he based his opinion were hearsay, which was admissible only if properly admitted under the business records exception to the hearsay rule. Slater argued that "to establish that the medical records . . . Macer relied upon have been properly authenticated, and are thus admissible as evidence upon which an expert witness may rely upon, the records must be accompanied by testimony certifying" the

7

requirements of Evidence Code section 1271 have been met (i.e., made in the regular course of a business; made at or near the time of the act, condition, or event; the custodian of the records testifies to their identity and mode of preparation; and the sources of information and method and time of preparation were such as to indicate its trustworthiness). Slater argued Macer's declaration did not adequately identify the records he reviewed and relied upon in forming his opinion and Armada failed to "properly place a full and complete set, or at the very least the relevant parts, of [her] medical records . . . from Armada, San Antonio[,] . . . Armour, and [Heritage]." Therefore, she argued, Armada had failed to properly reference admissible supporting evidence for the facts stated in his separate statement.

Slater's opposition disputed all Armada's undisputed facts and included a terse declaration from her expert, Dr. C. Paul Sinkhorn. It stated he had "review[ed] . . . the medical records and other documentation in this case" and based thereon his opinion was as follows: "It is my medical expert opinion, to a reasonable medical probability, that 'but for' the exploratory laparotomy performed by . . . Armada upon . . . Slater on or about February 23, 2011, [she] would not have incurred the perforated bowel that was diagnosed several days later, and would not have incurred the resultant and potentially life-threatening complications arising from this surgical complication."

*Ruling*

The trial court overruled Slater's objections to Macer's declaration, finding Walker's declaration was sufficient to authenticate the CD-ROM which "contain[ed] a list of the records reviewed by . . . Macer, which corresponds exactly to . . . Macer's declaration." The court found Sinkhorn's declaration did not contain a medically reasonable basis for his opinion. On January 9, 2013, the trial court granted the motion for summary judgment, and entered judgment in Armada's favor on January 24, 2013. Armada filed a memorandum of costs claiming $24,897.67, which included expert

8

witness fees of $20,650 under section 998.  The trial court denied Slater's motion to tax costs.  Slater filed her notice of appeal on March 27, 2013.

DISCUSSION

Slater argues Macer's declaration was insufficient to shift the burden of demonstrating the existence of a triable issue of material fact.  She contends Macer's declaration was inadmissible because the medical records upon which he relied were not properly authenticated nor were they properly placed before the trial court as required by *Garibay, supra,* 161 Cal.App.4th 735.  We agree.

A.  *Standard of Review*

"A trial court properly grants summary judgment where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.  [Citation.]  We review the trial court's decision de novo, considering all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports.  [Citation.]  In the trial court, once a moving defendant has 'shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established,' the burden shifts to the plaintiff to show the existence of a triable issue; to meet that burden, the plaintiff 'may not rely upon the mere allegations or denials of its pleadings . . . but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action . . . .'" (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476-477.)

As "'often said . . . a summary judgment is a drastic measure which deprives the losing party of trial on the merits.'  [Citations.]  The right to a jury trial, embodied in article I, section 16 of the California Constitution, is at stake." (*Bahl v. Bank of America* (2001) 89 Cal.App.4th 389, 395.)  The test for granting summary judgment against a party is not whether that party's case is weak.  Rather, summary judgment can only be granted against a party if the evidence shows that no reasonable

9

trier of fact could find facts in favor of that party.  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850-851.)

"Like the trial court, we must strictly construe the moving papers and liberally construe the materials offered in opposition.  The evidence in support of and in opposition to the motion must be viewed in the light most favorable to the party against whom summary judgment was entered; due to the drastic nature of the procedure, all doubts about the propriety of granting the motion must be resolved in favor of its denial. [Citations.]"  (*Asplund v. Selected Investments in Financial Equities, Inc.* (2000) 86 Cal.App.4th 26, 36-37.)

*B.  Admissibility of Macer's Declaration*

Slater contends the trial court erred in overruling her evidentiary objections to Macer's declaration under the reasoning of *Garibay, supra,* 161 Cal.App.4th 735.  We review a trial court's ruling on evidentiary objections in connection with a summary judgment motion under an abuse of discretion standard.  (*Park v. First American Title Co.* (2011) 201 Cal.App.4th 1418, 1427; *DiCola v. White Brothers Performance Products, Inc.* (2008) 158 Cal.App.4th 666, 679; *Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694.)

In *Garibay, supra,* 161 Cal.App.4th 735, summary judgment was granted in favor of a doctor in a medical malpractice action based upon a nonparty's expert opinion the doctor did not commit malpractice.  "The main issue on appeal [was] whether an expert medical witness's declaration, setting forth facts of the surgery performed on plaintiff . . . based on the expert witness's review of hospital and medical records which were not properly before the court, was sufficient to meet the burden of the production of evidence required of the party moving for summary judgment."  (*Id.* at p. 740.) Defendant's expert based his opinion on his review of hospital and medical records, which did not accompany the declaration or the summary judgment motion, *and which*

*were not admitted into evidence under the business records exception to the hearsay rule.* (*Id.* at p. 737.)

The *Garibay* court held, "The summary judgment motion was insufficient because there were no facts before the court on which the expert medical witness could rely to form his opinion. The expert was not a percipient witness to and could not testify about what happened during the surgery. A proper method for producing these facts would have been, for example, by means of a declaration or deposition testimony from the doctor who performed the surgery, *or by properly authenticated medical records placed before the trial court under the business records exception to the hearsay rule.* Defendant's summary judgment motion, however, failed to place medical records before the trial court under the business records exception to the hearsay rule, and therefore those records could not provide evidence to support the expert medical witness's opinion or the summary judgment motion. Only after the facts were properly before the trial court could the expert form an opinion, and could the defendant moving for summary judgment meet his burden of production. Because the summary judgment motion lacked any evidentiary basis, it failed to make the factual showing required to shift the burden to the plaintiff. The grant of summary judgment must be reversed." (*Garibay, supra,* 161 Cal.App.4th at pp. 737-738, italics added.)

The defense expert in *Garibay* had attempted to testify in his declaration to the facts of the medical procedure without personal knowledge of those facts, relying on medical records that were not properly placed before the court pursuant to the business records exception to the hearsay rule. (*Garibay, supra,* 161 Cal.App.4th at p. 743.) "Without those hospital records, and without testimony providing for authentication of such records, [the defense expert's] declaration had no evidentiary basis," and "his expert medical opinion . . . had no evidentiary value. [Citation.]" (*Id.* at p. 742.)

*Garibay* recognized that "although hospital records are hearsay, they can be used as a basis for an expert medical opinion. However, 'a witness's on-the-record

11

recitation of sources relied on for an expert opinion does not transform inadmissible matter into "independent proof" of any fact.' [Citation.] 'Although experts may properly rely on hearsay in forming their opinions, they may not relate the out-of-court statements of another as independent proof of the fact.' [Citation.] Physicians can testify as to the basis of their opinion, but this is not intended to be a channel by which testifying physicians can place the opinion of out-of-court physicians before the trier of fact. [Citation.] Through his declaration, [the defense expert] attempted to testify to the truth of the facts stated in the declaration for an improper hearsay purpose, as independent proof of the facts." (*Garibay, supra,* 161 Cal.App.4th at p. 743.)

Here, as in *Garibay*, the medical records from San Antonio upon which Macer relied in forming his opinion were not properly authenticated so as to satisfy the business records exception to the hearsay rule.[2] Macer declared he formed his opinion based upon his review of copies of medical records and depositions provided to him by Armada's counsel, Walker. Walker provided his declaration attaching a CD-ROM containing "true and correct copies" of the depositions and medical records he gave to Macer to review. The CD-ROM contained PDF files of medical records from Armada, Armour, San Antonio, and Heritage. The PDF files of medical records from Heritage Park Nursing Center and from Armour both included executed form declarations from the custodians of records as to those records. The 3,548-page PDF file of Slater's medical records from San Antonio includes two form custodian of records affidavits both of which are blank and unexecuted. Because Armada failed to authenticate the hospital records as business records exempt from the hearsay rule, they were not properly placed

---

[2] Evidence Code section 1271 provides, "Evidence of a writing made as a record of an act, condition, or event is not made inadmissible by the hearsay rule when offered to prove the act, condition, or event if: [¶] (a) The writing was made in the regular course of a business; [¶] (b) The writing was made at or near the time of the act, condition, or event; [¶] (c) The custodian or other qualified witness testifies to its identity and the mode of its preparation; and [¶] (d) The sources of information and method and time of preparation were such as to indicate its trustworthiness."

before the trial court so as to provide evidentiary support for Macer's declaration. (*Garibay, supra,* 161 Cal.App.4th at p. 743.) Accordingly, the burden never shifted to Slater (Code Civ. Proc., 437c, subd. (p)(2) [once defendant shows plaintiff's claim has no merit, burden shifts to plaintiff to show existence of triable issue of material fact]), and the trial court erred by granting Armada's motion for summary judgment.

Armada attempts to distinguish *Garibay* by pointing out that in that case plaintiff objected to the absence of properly authenticated medical records to support the expert's declaration. He argues that here Slater failed to specifically object that he had failed to authenticate the hospital records upon which Macer relied and for that reason she has waived her challenge. He argues Slater did not specifically raise the lack of a fully executed declaration from the custodian of records and never suggested she challenged the admissibility of the medical records under the hearsay rule or Evidence Code section 1271. We disagree.

For an objection to the admissibility of evidence to be sufficient to preserve the issue for appeal, "'[T]he objection must be made in such a way as to alert the trial court to the nature of the anticipated evidence and the basis on which exclusion is sought, and to afford the [party opponent] an opportunity to establish its admissibility.' [Citations.]" (*People v. Hayes* (1999) 21 Cal.4th 1211, 1261; *In re Joy M.* (2002) 99 Cal.App.4th 11, 20.)

Slater's written objections, labeled "Lacks Foundation" and "Failure to Reference the Supporting Evidence After Each Material Fact Alleged," both included citations to *Garibay, supra,* 161 Cal.App.4th 735. Her second objection argued Macer's declaration was the only evidence cited as support for the "undisputed facts," without reference to admissible evidence. She specifically argued that because Macer did not have personal knowledge of the facts upon which he based his opinion, the facts upon which he based his opinion were hearsay admissible only if properly admitted under the business records exception to the hearsay rule. Slater specifically argued the

13

records could only be properly authenticated and made admissible as evidence upon which Macer could rely upon if they were accompanied by testimony certifying the requirements of Evidence Code section 1271 were met. She argued Macer's declaration did not adequately identify the records he reviewed and relied upon in forming his opinion and Armada had failed to "properly place a full and complete set" of her medical records before the court. Slater's written objection was sufficient to alert the trial court and Armada that she contended Armada had not established admissibility of the hospital records upon which Macer relied under the business records exception to the hearsay rule.

Armada also argues the trial court did not abuse its discretion by overruling Slater's objections to Macer's declaration because his counsel's declaration authenticated the hospital records. Walker's declaration stated the CD-ROM contained "true and correct copies" of the records he sent to Macer. While Walker's declaration confirms the documents were the ones he gave to Macer, it was not sufficient to authenticate the hospital records (Evid. Code, § 1400), or satisfy the business records exception to the hearsay rule (Evid. Code, § 1561, subds. (a), (c)).

Finally, in an apparent concession that the San Antonio medical records were not properly authenticated, on December 27, 2013, Armada filed a motion to augment the appellate record pursuant to California Rules of Court, rule 8.155(a)(1)(A), which permits the appellate record to be augmented with "[a]ny document filed or lodged in the case in superior court[.]" He seeks to augment the appellate record with the following documents: (1) a declaration of the custodian of records of San Antonio, executed on December 4, 2013 (while this appeal was pending and after Slater's appellant's opening brief was filed); (2) a CD-ROM containing Slater's medical records from San Antonio with executed declaration of the custodian of records; and (3) the declaration of Walker filed in the superior court on December 23, 2013, submitting the above items to the superior court as "additional evidence" in support of Armada's motion

14

for summary judgment. We ordered that Armada's motion would be treated as a request for judicial notice/request to take additional evidence on appeal and would be decided in conjunction with the appeal.

We deny Armada's request whether it be to augment the record, take judicial notice, or make a factual determination under Code of Civil Procedure section 909. "Augmentation does not function to supplement the record with materials not before the trial court. [Citations.] Reviewing courts generally do not take judicial notice of evidence not presented to the trial court. Rather, normally 'when reviewing the correctness of a trial court's judgment, an appellate court will consider only matters which were part of the record at the time the judgment was entered.' [Citation.] No exceptional circumstances exist that would justify deviating from that rule, either by taking judicial notice or exercising the power to take evidence under Code of Civil Procedure section 909. [Citations.]" (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3.)

Code of Civil Procedure "section 437c is unforgiving; a failure to comply with any one of its myriad requirements is likely to be fatal to the offending party." (*Brantley v. Pisaro* (1996) 42 Cal.App.4th 1591, 1607.) It was Armada's burden to demonstrate his expert's opinions were based upon "properly authenticated medical records placed before the trial court under the business records exception to the hearsay rule." (*Garibay, supra,* 161 Cal.App.4th at pp. 737-738.) He failed in that regard, and he has offered no compelling reason to be allowed for the first time on appeal to meet his burden.[3]

_____

[3] Although not raised in Slater's briefs, we also note that not only were the San Antonio records not properly authenticated, there was no proper authentication of other documents upon which Macer based his opinion as well. Exhibit D's PDF file of Armada's medical records contains no declaration from the custodian of records, and Walker's declaration they were part of the documents he gave to Macer did not authenticate the records (Evid. Code, § 1400), or satisfy the business records exception to the hearsay rule (Evid. Code, § 1561, subds. (a), (c)). Exhibit D's PDF files of the

15

In view of our above conclusions, we need not address Slater's other arguments for reversal. Nor need we address her arguments concerning the costs award because when a judgment falls, so does the costs award associated with it. (*Allen v. Smith* (2002) 94 Cal.App.4th 1270, 1284.)

DISPOSITION

Respondent's request for judicial notice/request to take additional evidence on appeal filed December 27, 2013, is denied. The judgment is reversed. Appellant is awarded her costs on appeal.

O'LEARY, P. J.

WE CONCUR:

MOORE, J.

THOMPSON, J.

---

depositions of Slater, her husband, and Fox are not signed and certified by the reporter. (See Code Civ. Proc., § 273.) And although a deposition can be authenticated by the attorney who took the deposition via a declaration, the copy lodged is a true and correct copy of the deposition (*Greenspan v. LADT LLC* (2010) 191 Cal.App.4th 486, 523; *Ambriz v. Kelegian* (2007) 146 Cal.App.4th 1519, 1526-1527 & fn. 3), Walker's declaration did not state the PDF files were true and correct copies of the depositions. It stated they were true and correct copies of what he gave Macer to review.