Filed 6/1/15  Pasti v. Darakjian CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ROSE SUSAN PASTI, | B253259 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. PC053260) |
| v. | |
| HRAIR E. DARAKJIAN et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Elia Weinbach, Judge.  Affirmed.

Law Offices of Gabor Szabo and Gabor Szabo for Plaintiff and Appellant.

La Follette, Johnson, De Haas, Fesler & Ames, Christopher P. Wend, Thien Nguyen and David J. Ozeran for Defendants and Respondents.

_____

Summary judgment was entered in favor of defendants and respondents Hrair E. Darakjian, M.D., and Mid-Valley Orthopedic Specialists, Inc. (hereafter collectively Darakjian) in a medical malpractice action. Plaintiff Rose Pasti appealed. We affirm the summary judgment and an order denying section Code of Civil Procedure section 473[1] relief.

**FACTS**

*Background*

On April 1, 2011, then 83-year-old Pasti fell and injured her wrist. The same day, Pasti received emergency medical treatment for her wrist injury at Providence Tarzana Hospital. Upon being discharged, she was referred to Darakjian, an orthopedic surgeon.

On April 5, 2011, Pasti went to Darakjian's office. In a typed "Orthopedic Evaluation" report prepared contemporaneously with the visit, Darakjian recorded the following information and impressions:

> "Surgery can restore better alignment, although normal function is not anticipated, even with surgery. Restriction in the range of motion can be present with or without surgery. Surgery has the additional risk of vascular injury, nerve injury to the median nerve and tendon injury that can affect movement of the fingers. Additional surgery may become necessary if there is a tendon injury or for hardware removal. Due to her age, the bones are soft and the risks of complications and failure of the surgery are much higher. A lengthy discussion was held with the patient about the risks and complications. The patient is adamant about not having any surgery. She understands that the fracture will heal, however, a deformity will persist in the wrist without surgery. She agrees to have the cast treatment."[2]

---

[1]  All further undesignated section references are to the Code of Civil Procedure.

[2]  There is conflicting evidence in the record as to how much of the information recorded in Darakjian's Orthopedic Evaluation report was actually relayed to Pasti by

All of the following facts are undisputed: Darakjian put a cast on Pasti's wrist during the visit on April 5, 2011. Pasti returned to Darakjian on April 13, April 21, and May 9, 2011. On the May 9 visit, Darakjian removed the cast from Pasti's wrist, applied a splint, and referred Pasti to physical therapy. Pasti never returned to Darakjian.

On February 6, 2012, Eli T. Ziv, M.D., performed surgery on Pasti's wrist.

***The Litigation***

In June 2012, Pasti filed a complaint for medical malpractice against Darakjian. Pasti's complaint alleged that Darakjian acted below the standard of care in that he (1) "failed to properly diagnose the seriousness of [Pasti's] injuries;" (2) "failed to realize that only surgery could repair the fractures;" (3) "failed to perform the surgery;" and (4) "failed to properly align the fractured bones before he applied the cast." Pasti alleged that Darakjian's errors and omissions caused her to suffer "one year of extreme pain . . . until another surgeon performed the needed surgery, which should have been performed by [Darakjian]." Pasti did not allege a cause of action for lack of informed consent, nor did her complaint allege any facts regarding a lack of informed consent.

Darakjian filed a motion for summary judgment (MSJ). The MSJ was supported by the declaration of a medical expert, George Macer, M.D., who opined that the medical treatment provided by Darakjian to Pasti complied with the standard of care. Dr. Macer stated that Darakjian "acted appropriately" by treating Pasti "conservatively," explaining that "placing a cast is standard with fractures of the radius, especially in older patients who do not want surgery." As summarized by Dr. Mercer: "It is my medical opinion that to a reasonable degree of medical probability, nothing [Darakjian] did or did not do caused [Pasti's] malunion, or the need to undergo surgery."

---

Darakjian. At her deposition, Pasti testified that Darakjian told her little more during their initial visit than that a cast was "just as good as" surgery for her. Further, Pasti denied she told Darakjian that she was opposed to having surgery.

3

Pasti filed an opposition to Darakjian's MSJ supported by a declaration from a medical expert, Bernard Diamond, M.D., who faulted Pasti's medical treatment. As summarized by Dr. Diamond: "[A] closed reduction to . . . Pasti's comminuted displaced fracture was not carried out prior to placing a cast on her wrist, which resulted in the malunion of the fraction of the distal radius and ulna."[3]

In reply papers, Darakjian objected to Dr. Diamond's declaration, asserting his opinions lacked foundation because his declaration did not show that the doctor had reviewed any of Pasti's medical records, including any records from Tarzana Hospital, Dr. Ziv, or Darakjian's office.

The parties argued the merits of the MSJ to the trial court. The court's written tentative ruling was to grant the MSJ because the declaration of Pasti's expert, Dr. Diamond, lacked a proper foundation as argued in Darakjian's reply papers. During argument, a lawyer appearing on behalf of the law office representing Pasti responded to the issue as follows:

> "It's no secret that experts' declarations are at least in part drafted by counsel for the parties. And in this case we have drafted the declaration of our expert, Dr. Diamond, and, admittedly, we did not do a very good job in conveying to the court exactly what information Dr. Diamond relied on in forming his opinion.
>
> "For that, counsel is prepared to file a 473 motion because it would be unjust to deny plaintiff's day in court because of the shortness of Dr. Diamond's declaration. It was only two pages, and I think it didn't clearly convey exactly what he did rely on.
>
> "Dr. Diamond's declaration does state that he relied on the x-rays. There is really nothing else in her medical record other than her x-rays and

---

[3] Further, as noted above Pasti, disputed the extent to which Darakjian explained her surgery versus cast treatment options. This evidence, of course, had no relevance inasmuch as Pasti's complaint did not allege any claim based on a theory of a lack of informed consent for the cast.

4

defendant doctor's self-serving orthopedic evaluation reports. . . . [T]hose reports, the authenticity of those reports, are hotly contested and there is a direct factual issue as to their correctness or actually what was said to the patient, plaintiff, by the defendant doctor.

"She denies that he explained to her the surgery options. She claims that he talked her out of surgery. And for defendant's expert to rely on those reports I think it's really for the jury to decide the believability of defendant's experts.

"But Dr. Diamond's very short declaration does refer to the numerous x-rays and from those x-rays it was obvious that something was not done.

"This is a case of omission. This is a case where defendant doctor failed to operate when he should have. There is [*sic*] no detailed operative reports with which to review for our expert. There is really just the x-rays only and defendant doctor's orthopedic evaluations.

"And Dr. Diamond's declaration does refer to the standard of care in the community in paragraph 8 when he states that quote unquote, closed reduction of Ms. Pasti's convoluted displaced fracture distal radius and ulna should have been carried out as a standard and ordinary procedure prior to placing a cast on her right wrist ulna or a distal radial osteotomy should have been performed that is the brief explanation of what the standard of care would have been.

"Alternatively defendants themselves asked for an opportunity to depose Dr. Diamond, and we're willing to offer up Dr. Diamond for a deposition if your honor would suspend his ruling so that Dr. Diamond can better explain the basis of his medical opinion.

"And in the event Dr. Diamond's testimony is ignored, then I guess we only have Dr. Macer the defendant's expert opinion. However, it should be up to the jury to decide the believability of Dr. Macer.

5

Dr. Macer's declaration verbatim repeats what is contained in the orthopedic evaluation reports of defendant doctor. I think the jury can decide if Dr. Macer is believable. I think it would just be completely unfair to prevent plaintiff from having her case heard by a jury."

At the conclusion the hearing, the trial court granted Darakjian's MSJ. Citing *Simmons v. West Covina Medical Clinic* (1989) 212 Cal.App.3rd 696, 704, the court ruled that Pasti failed to meet her burden of establishing a dispute by way of expert evidence showing that Darakjian's conduct failed to comply with the standard of care and caused or contributed to Pasti's injuries to a reasonable degree of medical probability. In making its ruling, the court sustained three of four of Darakjian's evidentiary objections to Dr. Diamond's declaration, including his ultimate opinion regarding negligence, finding that Dr. Diamond's statements lacked a proper foundation. The trial court specifically noted: "The declaration lacks foundation as it does not recite the records . . . supporting Dr. Diamond's opinion." The trial court signed and entered a judgment on MSJ in favor of Darakjian.

From this point moving forward, specific dates become important as they affect the issue of timeliness of the current appeal. On August 16, 2013, Darakjian served Pasti with notice of entry of the summary judgment entered on July 29, 2013. The service of the notice of entry of the judgment triggered the running of the ordinary 60 day period for filing a notice of appeal (see Cal. Rules of Court, rule 8.104), subject to an extension of time, if any applied (see Cal. Rules of Court, rule 8.108). Thus, a notice of appeal had to be filed by October 15, 2013.

On September 30, 2013, Pasti filed a motion to vacate the trial court's "order" granting Darakjian's MSJ pursuant to section 473. Pasti claimed there had been a "clerical-like error" in preparing Dr. Diamond's declaration for the opposition to the MSJ. Pasti claimed that her attorney handwrote notes for Dr. Diamond's declaration on the front and back sides of pages on a yellow legal pad. But, when her attorney's secretary typed up the doctor's declaration from the attorney's handwritten notes, she

6

failed to notice the material on the back side of one of the pages, and inadvertently did not include that material in the doctor's declaration. This version of events was supported by a declaration from Pasti's attorney who stated: "[I] simply was not aware of the fact that Dr. Diamond's declaration was missing a material portion of [my] notes, prior to it being forwarded to the doctor for his signature and prior to submitting it to the court. [I] mistakenly believed that all of [my] notes were typed and that the declaration of Dr. Diamond was complete." A declaration from the attorney's secretary corresponded with the attorney's version of events. Neither of the two declarations included information describing the actual content of the materials on the back side of the legal pad page which purportedly had inadvertently not been transcribed.[4]

On November 8, 2013, the trial court denied Pasti's motion to vacate the summary judgment pursuant to section 473. The court's signed order indicates it construed the motion as seeking relief pursuant to both the discretionary "excusable neglect" and the mandatory "attorney fault" provisions of section 473, subdivision (b).

With respect to mandatory relief, the trial court's order reads: "The court cannot grant [mandatory] relief . . . based on attorney [fault] because an order granting summary judgment is not a 'dismissal' for purposes of the statute." The court cited *English v. IKON Business Solutions, Inc.* (2001) 94 Cal.App.4th 130, 149.

As to discretionary relief, the court's order stated: "Plaintiff is not entitled to discretionary relief . . . because counsel's inadvertence and error in filing inadequate opposition papers does not constitute circumstances equivalent to a default – such as where a party completely fails to file an opposition. (*Garcia v. Hejmadi* [(1997)] 58

---

**4**     On August 14, 2013, Pasti had filed a motion for "reconsideration and revocation" of the trial court's order granting Darakjian's MSJ. The motion was based on section 1008, and argued there were "new facts" for the trial court's consideration. The motion claimed there was a "transcription" error in preparing Dr. Diamond's declaration for the opposition to the MSJ. Basically, the reconsideration motion largely mirrored the later motion to vacate pursuant to section 473. The trial court denied the motion for reconsideration on the ground that it was procedurally invalid as it was filed after the judgment had already been entered. The court's ruling was correct, and Pasti does not challenge on appeal the ruling on her motion for reconsideration.

Cal.App.4th 674, 683 [(*Garcia*)] . . . . [¶] Additionally, the error cited here, counsel's failure to realize that his secretary failed to transcribe all of his notes is not 'excusable.' (*Garcia* at 682.) [¶] [Finally,] Plaintiff has not demonstrated that judgment was entered because of counsel's error. Plaintiff does not state what was omitted from the original declaration. Counsel admits that he subsequently gave additional documents to Dr. Diamond . . . who was then able to render a more informed opinion. The error appears to be a failure to give the expert all relevant documents."

On December 3, 2013, Pasti filed a notice of appeal from the summary judgment entered on July 29, 2013, and from the order denying her motion for relief pursuant to section 473 entered on November 8, 2013.

## DISCUSSION

### I.   The Appeal is Timely as to the Summary Judgment

Respondent Darakjian contends Pasti's notice of appeal from the summary judgment was untimely and we lack appellate jurisdiction to entertain her challenge to the summary judgment. We disagree.

The timely filing of a notice of appeal is a prerequisite to appellate court jurisdiction. (*Van Beurden Ins. Services, Inc. v. Customized Worldwide Weather Ins. Agency, Inc*. (1997) 15 Cal.4th 51, 56.) Where, as in Pasti's current case, a party serves a "notice of entry" of a judgment, the time to file a notice of appeal ordinarily is 60 days. (Cal. Rules of Court, rule 8.104(a)(1).) Darakjian served a notice of entry of judgment on August 16, 2013, triggering the 60-day time period for filing a notice of appeal. Thus, the time to file a notice of appeal expired around mid-October 2013. Pasti filed her notice of appeal on December 3, 2013. Accordingly, unless an extension of time to file a notice of appeal applies for purposes of the present appeal, Pasti filed her notice of appeal too late.

Under California Rules of Court, rule 8.108(c), the filing of a "valid motion" to vacate a judgment within the 60 day time period for filing a notice of appeal will extend the ordinary 60 day appeal deadline until the earliest of the following three dates: (1) 30 days after the order is denied; (2) 90 days after the date the motion to vacate was

8

filed; or (3) 180 days after the actual entry of judgment.  Still, there is no extension of the time to file a notice of appeal under rule 8.108(c) unless a motion to vacate a judgment was a "valid motion" to vacate.  A "valid motion to vacate" a judgment within the parameters of rule 8.108(c) means a motion that is "procedurally proper" and based on a "recognized ground" for vacating a judgment, for example, a statutory motion under section 473 or section 663.  (See Eisenberg, Horvitz & Weiner, Cal. Practice Guide: Civil Appeals and Writs (Rutter 2014) Notice of Appeal, § 3:82, pp. 3-39 to 3-40, and authorities cited therein.)  It does not mean a "substantively meritorious motion" to vacate.

Here, Pasti filed her motion to vacate the summary judgment on September 30, 2013, well within the ordinary 60 day period for filing a notice of appeal.  The motion to vacate was timely, hence, procedurally proper, and it was based upon a recognized statutory ground for vacating a judgment, to wit, section 473.  The trial court denied Pasti's motion to vacate on November 8, 2013, triggering the 30 day extension period for filing her notice of appeal.  (Cal. Rules of Court, rule 8.108(c).) Pasti filed her notice of appeal on December 3, 2013, within the 30 day extension period.  (*Ibid.*)

Darakjian has presented extensive and well-crafted arguments as to why Pasti did not file a valid motion to vacate the judgment.  He argues we should not find an extension of the time to file a notice of appeal.  We are not persuaded.  We are satisfied that we have appellate jurisdiction because we find that Pasti filed a valid motion to vacate the summary judgment.  The motion was procedurally proper in that it was filed within the ordinary 60 day period for filing a notice of appeal, and it was based on a recognized ground, namely, section 473.

## II.    The Trial Court Did Not Err in Granting Darakjian's Motion for Summary Judgment

Pasti contends the summary judgment in favor of Darakjian must be reversed because the trial erred in not considering his doctor's declaration  in support of her opposition to Darakjian's MSJ.  Pasti argues that her expert's declaration was sufficient to defeat the summary judgment motion.  We find no error.

9

"We review the trial court's summary judgment rulings de novo, viewing the evidence in a light favorable to the plaintiff as the losing party, liberally construing the plaintiff's evidentiary submission while strictly scrutinizing the defendant's own showing and resolving any evidentiary doubts or ambiguities in the plaintiff's favor." (*Weber v. John Crane, Inc.* (2006) 143 Cal.App.4th 1433, 1438 (*Weber*).) A motion for summary judgment must be granted "if all the papers submitted show that there is no triable issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) A defendant has met his burden of showing that a cause of action has no merit if he has shown that there is a complete defense to that cause of action. Once the defendant has met that burden, the burden shifts to the plaintiff to show a triable issue of one or more material facts exists as to that cause of action. (*Id*., subd. (p)(2); see *Weber, supra*, 143 Cal.App.4th at p. 1437.) "In determining whether the papers show that there is no triable issue as to any material fact the court shall consider all of the evidence set forth in the papers . . . and all inferences reasonably deducible from the evidence . . . ." (Code Civ. Proc., § 437c, subd. (c).) In some instances, however, "evidence may be so lacking in probative value that it fails to raise any triable issue." (*Advanced Micro Devices, Inc. v. Great American Surplus Lines Ins. Co*. (1988) 199 Cal.App.3d 791, 795.)

The real issue here is whether the trial court erred in excluding an expert witness declaration. Recently, in the context of a pretrial evidentiary motion, the California Supreme Court held that, "[e]xcept to the extent the trial court bases its ruling on a conclusion of law . . . , its ruling excluding . . . expert testimony [is reviewed] for abuse of discretion." (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773.) The appropriate standard of review for summary judgment evidentiary rulings is an issue the California Supreme Court has, so far, declined to address. (*See Reid v. Google, Inc*. (2010) 50 Cal.4th 512, 535 ["Thus, we need not decide generally whether a trial court's rulings on evidentiary objections based on papers alone in summary judgment proceedings are reviewed for abuse of discretion or reviewed de novo."].) The majority of California appellate courts, however, including this one, have

10

held that summary judgment evidentiary rulings, like other evidentiary rulings, are reviewed for abuse of discretion. (See e.g., *Garrett v. Howmedica Osteonics Corp.* (2013) 214 Cal.App.4th 181; *Park v. First American Title Co*. (2011) 201 Cal.App.4th 1418, 1427; *Miranda v. Bomel Construction Co., Inc*. (2010) 187 Cal.App.4th 1326, 1335; *Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694; *Walker v. Countrywide Home Loans, Inc*. (2002) 98 Cal.App.4th 1158, 1169; *Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 192, fn. 15.)

It has long been settled that the standard of care against which the acts of a physician are measured is an issue peculiarly within the knowledge of experts, that can only be proved by expert testimony, unless the conduct required by the particular circumstances is within the common knowledge of laypersons. (See *Landeros v. Flood* (1976) 17 Cal.3d 399, 410.) Once Darakjian submitted an expert declaration refuting Pasti's malpractice claim, the burden shifted to Pasti to submit an expert declaration establishing the existence of a triable issue of fact. As the Supreme Court stated in reviewing a summary judgment in *Sanchez v. South Hoover Hospital* (1976) 18 Cal.3d 93: "[I]t is settled that an opponent's failure to file counteraffidavits admits the truth of the movant's affidavit." (*Id*. at p. 107.)

Here, the declaration of Darakjian's expert, Dr. Macer, relying on Pasti's medical records, established that the care rendered by Darakjian met the standard of care, and that Darakjian's care and treatment did not cause Pasti to suffer any injury. In her opposition, Pasti submitted the declaration of Dr. Diamond, who expressed the opinion that Pasti "received substandard care," explaining that "closed reduction of [her] comminuted displaced fracture distal radius ulna should have been carried out as a standard and ordinary procedure, prior to placing a cast on her right wrist, or a distal radial osteotomy should have been performed." At first blush, it appears that the papers submitted by the parties for and against Darakjian's MSJ showed the existence of a triable issue of fact on a material issue, i.e., whether or not Darakjian's treatment fell below the standard of care. (See *Landeros v. Flood, supra,* 17 Cal.3d at p. 410.)

11

On closer examination, however, the blush pales. The ultimate opinion offered in Dr. Diamond's declaration was not shown to be based upon his review of any of Pasti's medical records. Dr. Diamond did not state that he had reviewed any records from Tarzana Hospital, where Pasti was treated on the day she fell, or any records from Darakjian's office, or any records from any other medical provider. The only materials that Dr. Diamond explicitly referenced in his declaration were an x-ray taken on April 11, 2011 and a "multitude of x-rays taken subsequently," but he did not state whether he personally reviewed the noted x-rays, or relied on reports about these x-rays prepared by others. In fact, Dr. Diamond's declaration never truly states that he concluded that *Darakjian* had done something wrong. Rather, Dr. Diamond opined only that he "believes" that Pasti "received substandard care as closed reduction of [her] comminuted displaced fracture should have been carried out . . . prior to placing a cast on her right wrist, or a distal radial osteotomy should have been performed."

Basically, Dr. Diamond offered an opinion concerning what he "believes" about the nature of care that Pasti "should have received," but he never actually stated that it had been Darakjian who had failed to act properly. Further, Dr. Diamond never stated that his opinions were based on a reasonable degree of medical probability. Having failed to lay a proper evidentiary foundation for his opinion, Dr. Diamond's opinion was inadmissible, and properly disregarded by the trial court.

In *Garibay v. Hemmat* (2008) 161 Cal.App.4th 735 (*Garibay*), Division Three of our Court held that an expert's declaration in support of a defendant doctor's MSJ did not meet the initial burden of producing evidence where the expert based his opinion on facts derived from his review of hospital and medical records which were not properly authenticated and not properly admitted into evidence, either separately or as a part of the expert's declaration. (*Id*. at pp. 737, 741-743.) As stated by Division Three: "[The expert] had no personal knowledge of the underlying facts of the case, and attempted to testify to facts derived from medical and hospital records which were not properly before the court. Therefore his declaration of alleged facts had no evidentiary foundation. An expert's opinion based on assumptions of fact without evidentiary

12

support has no evidentiary value." (*Id.* at p. 743.) In *Barragan v. Lopez* (2007) 156 Cal.App.4th 997, the Court of Appeal similarly held that an expert's declaration submitted by a plaintiff in opposition to a defendant doctor's MSJ did not show the existence of a triable issue of fact because the facts did not support the expert's opinion. (*Id.* at p. 1007.)

Here, we have an analogous situation. Indeed, there existed even less foundation for the plaintiffs expert's opinion than that of the expert in the *Garibay* case because Dr. Diamond did not even identify which records he reviewed, if any, in formulating his opinion. He not only failed to state that he reviewed the hospital records and records from Darakjian and Dr. Ziv. Dr. Diamond assigned fault for a failure to perform a closed reduction procedure prior to placing the cast, but Darakjian's records stated that Pasti's fracture "was reduced and the wrist splinted" at Tarzana Hospital. In addition, Dr. Diamond stated in his consultation report: "It does not *sound* as though a closed reduction was carried out." This suggests that Dr. Diamond himself was uncertain about what had occurred during Pasti's treatment. We agree with the trial court's observation in granting the MSJ: "Dr. Diamond's consultation report attached to [his] declaration supports that his opinion is based on speculation as to what care and treatment actually occurred prior to his consultation with and examination of [Pasti]." The published cases support the proposition that the value of an expert's evidence rests not so much in the ultimate conclusion expressed, "'but in the factors considered and the reasoning employed.'" (See *Bay Area Rapid Transit Dist. v. Superior Court* (1996) 46 Cal.App.4th 476, 482.) Here, the expert's declaration was not shown to be based on facts and reasoning based on the facts.

Pasti cites *Powell v. Kleinman* (2007) 151 Cal.App.4th 112 (*Powell*), *Kelley v. Trunk* (1998) 66 Cal.App.4th 519 (*Kelley*), and *Hanson v. Grode* (1999) 76 Cal.App.4th 601 (*Hanson*), in support of the proposition that an expert's evidence offered by a party opposing an MSJ may be given more lenient consideration. *Powell*, *Kelley* and *Hanson* all discuss the well-settled rule that, in considering the declarations of the parties' experts in the context of a MSJ, a court must liberally construe a declaration of an opposing

13

plaintiff's expert, and resolve any doubts as to the propriety of granting the motion in favor of the plaintiff. (See, e.g., *Powell, supra*, 151 Cal.App.4th at p. 125; and see also *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 21.) Further, an opposing plaintiff is entitled to all favorable inferences that reasonably may derive from his or her expert's evidence. (*Powell, supra*, 151 Cal.App.4th at p. 129; and see also *Hanson, supra*, 76 Cal.App.4th at p. 607.)

We do not disagree with, nor discount, these well-settled rules applicable to a court's examination of an MSJ; such rules are, of course, correct in the abstract. The problem for Pasti, however, is not a failure to give a liberal reading of her expert's evidence; the problem is that her expert's evidence was inadmissible as it lacked a foundation. Where, as in the current case, an expert fails to provide evidence showing the existence of a triable issue of fact, a court may grant a MSJ. The rule of strict and liberal construction of the parties' evidence in the context of a MSJ "does not mean that courts may relax the rules of evidence in determining the admissibility of an opposing declaration. Only *admissible evidence* is liberally construed in deciding whether there is a triable issue." (*Bozzi v. Nordstrom, Inc.* (2010) 186 Cal.App.4th 755, 761.)

This brings us to the value of Pasti's deposition testimony that Darakjian never offered her any information regarding surgery other than to say that a cast was "just as good" as surgery for her, and that she did not tell Darakjian that she was opposed to having surgery. We disagree with Pasti that her deposition testimony was sufficient to defeat Darakjian's MSJ. First, Pasti did not allege a cause of action for lack of informed consent, nor allege facts within her negligence claim to show that she was alleging lack of consent as a theory of liability. The issues for an MSJ are, or course, "'framed by the pleadings.'" (*Turner v. Anheuser-Busch, Inc.* (1994) 7 Cal.4th 1238, 1252.) As Pasti's complaint only faulted the manner of actual treatment, a failure to discuss the pros and cons of surgery versus a cast, accepting this in fact occurred, is irrelevant in light of the evidence in Darakjian's MSJ showing that he satisfied the standard of care in treating Pasti conservatively. To the extent surgery was an option, Darakjian satisfied the standard of care in opting to go the conservative route in treating Pasti without surgery.

14

Absent an admissible expert opinion to the contrary, Pasti's deposition testimony did not raise a triable issue of material fact.

## III. The Trial Court Did Not Err in Denying the Motion to Vacate the Judgment Pursuant to Section 473

Pasti next contends the trial court erred as a matter of statutory interpretation and application, and that it abused its discretion, in denying her section 473 motion to vacate the summary judgment. We find no error.

### 1. Mandatory Relief Based on Attorney Fault

Section 473's mandatory relief provision requires a court to vacate a "(1) resulting default entered by the clerk against his or her client, and which will result in entry of a default judgment, or (2) resulting default judgment or dismissal entered against his or her client," whenever a timely application for such request is "accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect . . . ." (§ 473, subd. (b).) The only circumstance in which mandatory relief may be denied is when "the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect." (*Ibid*.) One issue directly presented by Pasti's current appeal is whether section 473's mandatory relief provision applies to a summary judgment motion. That is, may section 473's "default or dismissal" language be interpreted to include the situation where a party lost a MSJ due to inadequate opposing papers.

In *English v. IKON Business Solutions, Inc*., *supra*, 94 Cal.App.4th 130, the Third District Court of Appeal held that the mandatory relief provision of section 473 does not apply to a summary judgment proceeding because entry of a summary judgment does not constitute a default judgment or a dismissal. (*Id*. at pp. 143-149.) "By its very nature, a summary judgment is distinct from both a 'default' and a 'default judgment' as those terms are used in section 473(b)." (*Id*. at p. 144.) "Given the limited meaning of the word 'dismissal' as used in the mandatory [relief] provision of section 473(b), a summary judgment in favor of a defendant is not a 'dismissal.'" (*Id*. at 148.)

15

In *Bernasconi Commercial Real Estate v. St. Joseph's Regional Healthcare System* (1997) 57 Cal.App.4th 1078, in reviewing a dismissal for failure to serve a complaint within three years (§§ 583.210, 583.250), the Third District Court of Appeal held that the mandatory relief provision of section 473 should be "limited to those dismissals which are the procedural equivalent of defaults — i.e., those which occur because the plaintiff's attorney has failed to oppose a dismissal motion." (*Id.* at p. 1082.)

In *Gotschall v. Daley* (2002) 96 Cal.App.4th 479, the Third District Court of Appeal held that the mandatory relief prescribed under section 473 is intended to allow relief for a failure to appear, but not for submission of deficient opposition papers. As stated in *Gotschall*: "[T]he mandatory [relief] provision . . . applies only to those situations in which the mistake causes a failure to oppose a dismissal motion, such as failing to appear for the hearing on the motion." (*Id*. at p. 484.)

Pasti relies on *Avila v. Chua* (1997) 57 Cal.App.4th 860 (*Avila*) for a different result. In *Avila*, the plaintiff submitted an untimely opposition to a MSJ. The trial court refused to consider the late opposition and granted the motion, essentially finding that it was unopposed. The trial court thereafter denied a motion for relief under section 473's mandatory relief provision for attorney fault. The trial court denied the motion for relief. On appeal, Division Five of our court held that the trial court erred in denying the motion for relief under the mandatory relief provision of section 473, reasoning that the striking of the late-filed opposition papers to the MSJ was "directly analogous to a default." (*Id*. at p. 868.) In reaching this result Division Five distinguished *Heuns v. Tatum* (1997) 52 Cal.App.4th 259 (*Heuns*).

In *Heuns*, a party sought to avoid a settlement agreement based on a claim of attorney fault. In finding section 473 did not apply, the Third District Court of Appeal concluded that section 473's mandatory relief provision was not intended to be "used indiscriminately by . . . attorneys as a 'perfect escape hatch.'" (*Heuns,* at pp. 263-264.) In so holding, the Court of Appeal reasoning that finding section 473 applied would allow a settlement agreement to be set aside even where there were no grounds for rescission, and would seriously intrude into the law of contracts. Further, creating new

16

contract rules under section 473 would undermine the strong public policy in favor of settlements. (*Id.* at pp. 264-265.)

We find Pasti's current case is not akin to *Avila*. In contrast to what occurred in *Avila*, Darakjian's MSJ in Pasti's current case was decided based on the moving and the opposing papers. Here, there was no failure to file a timely opposition resulting in the opposition being stricken, and the motion being deemed, in essence, unopposed. To the contrary, Pasti filed opposition to the motion, which had been reviewed; the court ruled the opposition to be deficient to support denial of Darakjian's MSJ. Unlike *Avila*, the situation here is not analogous to default; it is a case of filing a losing opposition. The mandatory relief provision of section 473 is not meant to give counsel two opportunities to oppose a MSJ.

*Ambrose v. Michelin North America, Inc.* (2005) 134 Cal.App.4th 1350 (*Ambrose*) is more aptly analogous to Pasti's current case. In *Ambrose*, a plaintiff lost a summary judgment motion and then sought relief under the mandatory relief provision of section 473 on the grounds that counsel was at fault for not requesting a continuance of the hearing for further preparation. Division Two of the Fourth District Court of Appeal held that this did not fall under the mandatory relief provision, distinguishing it from *Avila*, *supra*, because substantive opposition was filed.

More recently, Division Three of our court ruled that the mandatory relief provision of section 473 does not apply to summary judgments and that it "should be limited to the narrow class of cases in which a default judgment or a dismissal has been entered." (*Las Vegas Land & Development Co, LLC v. Wilkie Way*, LLC (2013) 219 Cal. App.4th 1086, 1092.)

In *Henderson v. Pacific Gas & Electric Co.* (2010) 187 Cal.App.4th 215, the Fifth District Court of Appeal also rejected *Avila*, and held that "the mandatory relief provision of section 473(b) does not include relief for mistakes an attorney makes in opposing, or not opposing, a summary judgment motion (or not timely requesting a continuance of a hearing on a summary judgment motion)." (*Id.* at pp. 225-229.) In *Huh v. Wang* (2007) 158 Cal.App.4th 1406, the Sixth District Court of Appeal also expressed similar

17

sentiments.  (*Id*. at p. 1416).  And, finally, we also expressed similar sentiments in *Prieto v. Loyola Marymount University* (2005) 132 Cal App.4th 290, 295.)

Furthermore, even were we to conclude that the mandatory relief provision of section 473 applied in Pasti's current case, reversal is not required where a court finds an attorney's fault did not "actually cause" the ruling that was entered.  As stated in section 473, the mandatory relief provision does not apply when "the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect."

In Pasti's case, the trial court made an express finding that Pasti did not show that attorney fault caused the court to grant Darakjian's MSJ.  Instead, the trial court ruled Pasti's 473 motion did not show what material had been omitted from the opposition papers.  In other words, Pasti failed to show causation because it could not be determined that absent her attorney's omission, it would have made a difference.  Pasti did not show that one page of multiple pages of notes having not been transcribed caused her to lose the MSJ.  As the trial court stated:  "Plaintiff does not state what was omitted form the original declaration.  Counsel admits that he subsequently gave additional documents to Dr. Diamond . . . who was then able to render a more informed opinion.  The error appears to be the failure to give the expert all relevant documents."

### 2.      Discretionary Relief Based on Excusable Neglect

Section 473's discretionary relief provision permits a party to be relieved from the consequences of mistake, inadvertence, surprise, or neglect.  Under this provision, a court has discretion, upon any terms as may be just, relieve a party from a "proceeding" taken against the party through his or her mistake, inadvertence, surprise, or excusable neglect.  Thus, discretionary relief is allowed in much broader contexts than the mandatory relief provision for attorney fault.  """Anything done from the commencement to the termination is a proceeding."'  [Citation.]"  (*Lorenz v. Commercial Acceptance Ins. Co*. (1995) 40 Cal.App.4th 981, 989.)  Still, a party must make a showing of the claimed mistake, inadvertence, surprise, or excusable neglect.  (*Ibid*.)  The court then considers the facts and circumstances of the case to determine whether the reasons given for

18

seeking relief are satisfactory. (*Eigner v. Worthington* (1997) 57 Cal.App.4th 188, 196.) The court may grant discretionary relief under section 473 when it is satisfied that a litigant has shown that his or her conduct was "such as might have been the act of a reasonably prudent person under the same circumstances." (*Hearn v. Howard* (2009) 177 Cal.App.4th 1193, 1206.)

On appeal, a trial court's ruling on a motion for discretionary relief under section 473 shall not be disturbed unless the appellant shows of an abuse of discretion. (*Zamora v. Clayborn Contracting Group, Inc*. (2002) 28 Cal.4th 249, 257-258.) A trial court will be said to have abused its judicial discretion when its decision was arbitrary, capricious or beyond the bounds of reason in light of all of the circumstances. (See, e.g., *Blackman v. Burrows* (1987) 193 Cal.App.3d 889, 893.)

In Pasti's case, the trial court cited *Garcia*, *supra*, 58 Cal.App.4th 674 in support of its determination that there was no "excusable" neglect shown in connection with opposing Darakjian's MSJ. In *Garcia*, the Court of Appeal found that the a failure to present certain evidence and argument in opposition to a MSJ was not excusable because the facts and law were known at all times to the opposing party (or, to be more accurate, to the party's lawyer). (*Id*. at p. 684.) This result was in accord with the principle that section 473 "cannot be used to remedy attorney mistakes, such as the failure to provide sufficient evidence in opposition to a summary judgment motion." (*Wiz Technology, Inc. v. Coopers v. Lybrand* (2003) 106 Cal.App.4th 1, 17; see also *Generale Bank Nederland v. Eyes of the Beholder, Ltd.* (1998) 61 Cal.App.4th 1384, 1402 [counsel's "failure to discharge routine professional duties" or "properly prepare for the hearing" do not constitute excusable neglect].)

We find no error in the trial court's conclusion that the "transcription" error that was asserted in Pasti's case do not fit within the framework of mistake, inadvertence, surprise, or excusable neglect contemplated by section 473 for discretionary relief from a proceeding in the course of litigation. We fully agree that a secretary's mistranscription is something which can occur in the heat and press of litigation, but, here, there was a further error by counsel, of a different nature, which does not fall within the ambit of

19

section 473's discretionary relief provision.  The failure here is not the type of error "such as might have been the act of a reasonably prudent person under the same circumstances." (*Hearn v. Howard, supra,* 177 Cal.App.4th at p. 1206.)  We cannot say that the trial court abused its discretion; its decision was not beyond the bounds of reason.

## DISPOSITION

The summary judgment entered on July 29, 2013 is affirmed.  The order denying the motion for relief pursuant to section 473 entered on November 8, 2013, is affirmed.  Each party to bear its own costs on appeal.


BIGELOW, P.J.

We concur:


FLIER, J.


GRIMES, J.

20